## Muncy v. Hughes.
(Decided October 16, 1936.)

M. K. EBLEN for appellant.

C. A. NOBLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the regular election day on November 5, 1935, there was elected in the fourth class city of Hazard, Ky., councilmen from its six wards. Both the Democratic and Republican Parties had nominated candidates therefor in each of the wards, the appellee and plaintiff below, D. J. Hughes, being the Democratic candidate for the position in the Third ward, and the appellant and defendant below, J. A. Muncy, was his Republican opponent. There were cast and certified for Hughes 273 votes, and for Muncy 205 votes. Hughes was given the certificate of election and at the proper regular meeting of the council thereafter he presented himself and took the oath of office, as did also all the other elected members at that election. However, each defeated Republican candidate, and perhaps some of the defeated Democratic candidates, filed alleged contests at that meeting against their successful opponents.

In order to have a working majority so that they could successfully execute their prearranged plan, one

H. S. Turner, who seems to have been selected as the official motion maker for the Republicans, entered one to declare the position of N. S. Gay, as one of the councilmen, vacant, because he had procured the council to pay a claim asserted against the city by his wife and two daughters, the nature of which is immaterial to this controversy. That motion was carried, and the official motion maker then entered one that C. W. Napier, Jr., be and he was elected as a member from Ward No. 4 to fill the vacancy of the deposed N. S. Gay. The council thereby became effectively organized by the Turner group with the evident purpose of carrying out their previously formed policy of gaining absolute control of the council in order to assure the election of members of their group to the various city offices, one of whom was John E. Campbell, an attorney of the Hazard Bar whom the council, after being so organized, elected city attorney. It was he who drafted and filed the alleged contests of the defeated Republican candidates against their successful Democratic opponents; but none of which petitions even approached toward stating a cause of action as measured by undeviating court rules of approved practice in court proceedings. The only grounds attempted to be stated (but in most defective form) were (a) that the contestees were guilty of violating the corrupt practice act, and (b) that there had been cast for them illegal votes, the number of which was not stated, nor were the names of any illegal voters given. Neither was it alleged that enough of such illegal votes so defectively charged were cast for the contestees as to reduce their total number below the legal votes received by the contestants. However, we are not concerned in this case, except with the contest of Muncy against Hughes, the petition in which was of the nature that we have described.

Nothing was then done with the alleged contest against Hughes, and he proceeded to act as councilman until January 28, 1936. In the meantime litigation arose by some of the involved parties filing petitions against others, growing out of the controversies over the election, and in which adverse rulings against contestants were made concerning injunctive process sought in such litigations, and which rulings were confirmed by this court in motions made pursuant to section 297 of the Civil Code of Practice. We are unable to give further details about that litigation, since the records

thereof have not been made a part of this one. At any rate the aforesaid Campbell, at the meeting held on January 28th made a motion before the council to dismiss the contest of Muncy vs. Hughes. Whereupon C. W. Napier, Jr., who had taken the place of Gay as a member of the council as hereinbefore stated, made this motion, as shown by the minutes of the council proceedings—"Motion by C. W. Napier, and seconded by D. C. Combs, that the petition in the case of Muncy v. Hughes be dismissed, and D. J. Hughes be declared elected, and eligible to hold the office of the council of ward No. 3, of the city of Hazard." The vote on that motion was unanimous, and the minutes further recite that "D. J. Hughes, being present accepted and was sworn as required by law, and took his seat as councilman of ward No. 3, of the city of Hazard, Kentucky." It was, of course, unnecessary for the second oath to be administered to him, but evidently the council thought otherwise.

Hughes thereafter served until the following May 21, 1936, when Muncy, by the same attorney, John E. Campbell, at a pretended special meeting of the council, appeared before the members present, one of whom was Hughes (but the mayor of the town was out of the city) and moved that the previous order supra, of January 28, 1936, dismissing Muncy's contest, be set aside and held for naught, "because the complainant, J. A. Muncy, did not authorize one of his attorneys [Campbell] to dismiss said case before the council, and that he did not know that said case was going to be dismissed." A majority of the members, after the board was so organized for the purpose, sustained that motion and immediately proceeded on what the minutes termed a "hearing of the contest." The attempt to call that special meeting (which was done by the created majority members) was made only about one hour before its convening at 4 o'clock in the afternoon. The testimony heard by the trial court in this case is in conflict as to whether or not the council at that meeting heard any evidence. It is clearly shown, however, that Hughes had no knowledge that any such motion would be made and was without counsel. Muncy did not testify in this case, but he introduced witnesses who said that he did testify in the alleged contest mockery trial before the council, and his testimony at that time, as so given in hearsay form, was to the effect that he had heard that

the friends of Hughes at the election had given some voters money and liquor with which to influence votes for Hughes; but, not even according to that hearsay testimony did Muncy point out before the council any person with whom such corrupt practice was had. However, the council at the close of the hearing (whatever may have been its nature) proceeded to sustain the contest and to declare Muncy elected. Whereupon Hughes filed this equity action against him in the Perry circuit court to enjoin him from interfering with plaintiff in the discharge of the duties of the office to which he had been elected, and his right to which had been determined by the city council on January 28th at its meeting to which we have referred. Various motions, demurrers, and pleadings made the issues, and upon the testimony taken, the court permanently enjoined Muncy from laying claim to the office and from interfering with Hughes in the discharge of its duties. From that judgment, Muncy prosecutes this appeal.

His counsel contends that the special demurrer filed by him to plaintiff's petition should have been sustained on the ground that this proceeding is a contest one over the office of councilman from Ward No. 3 in the city of Hazard, and that the city council has exclusive jurisdiction. Furthermore, that equity will not determine election contests in this character of proceeding through the aid of injunctive process. The fallacy of those contentions lies in the fact that this proceeding is one to protect an incumbent in office in the discharge of his duties as such and to prevent an usurpation of his office by another. Such relief is universally extended by courts of equity, a proposition which counsel does not dispute.

A defense on the merits is, that Campbell was without authority to dismiss Muncy's contest by the motion he made for that purpose on January 28, 1936. That defense was denied by Hughes in his pleadings, and an issue of fact concerning it was sharply made. As said, Muncy did not testify in this case at all; but his attorney, Campbell, was introduced in his behalf on that issue, and he testified thus concerning it:

"Q. Are you the same John Campbell that asked the city council to dismiss the case of Muncy v. Hughes? A. Yes, sir.

"Q. Tell the court whether or not Mr. Muncy had

instructed you to make such a motion in his behalf. A. He had not."

He further testified that he drafted the call for the special meeting of the council on May 28th at the behest of a majority of the councilmen, and which was given out for service upon the members about one hour before the designated time for the meeting. The proof shows that when drafted only certain specific subjects were named for consideration at that meeting; but after the meeting was held (and Hughes was ousted and Muncy seated) the typewritten call was found to contain a pen and ink insertion saying, "and any other business that may come before it," which was in the handwriting of the ever-alert Campbell. Muncy did not sign the motion to set aside the order of January 28, 1936, nor did he testify to anything in support of that motion in the trial of this case—he not taking the stand, as we have previously stated.

Even if we should hold that an attorney possesses no implied authority to dismiss his client's action without specific authority (a question not determined because unnecessary), it would not serve defendant, Muncy, in this case, since the testimony of Campbell, which was all that was heard on that issue, does not show that his client was without knowledge of the contemplated dismissal. Furthermore, even if he had been without knowledge at the time, it is not shown that he did not become aware of it thereafter and acquiesced in it. It will be remembered that Campbell's testimony on that issue, as given supra, was, that Muncy had not instructed him to make the motion. Muncy, no doubt, was thoroughly familiar with the situation, and his attorney, Campbell, may have informed him as to the propriety of that step, or of its feasibility for the accomplishment of an immediate purpose in the organization of the council body. He is here trying to take advantage of an alleged dereliction of his counsel in the management of his contest case, and justice and good conscience require that he should clearly establish such alleged dereliction, and especially so after practically four months acquiescence therein.

But, independently of that question, we have seen that the council (the contest board) at the meeting on January 28, 1936, went much farther than to receive Campbell's motion for the dismissal of the contest. It

also proceeded to adjudge and determine the contest in favor of Hughes, and the later motion made on May 21, 1936, did not ask for the setting aside of that determination, but only to set aside the order "attempting to dismiss the petition of the complainant herein." No effort was made at that meeting (May 21) to set aside the order adjudging and determining Hughes to be the duly elected councilman from his ward, and it was never attacked, set aside, or in any manner modified.

The entire proceedings of the conspiring members of the city council of the city of Hazard in this case, antedating the filing of this action, as displayed by this record, would have to be promoted in order to reach the height of becoming farcical. It may be true that courts are without power to review or correct erroneous practice in the conduct of election contests before such bodies who are vested by the law with exclusive jurisdiction; but the proceedings in this case exhibit such extravagant abuses of, and departures from, even an approach to conformity with proper practice or decency and fairness, as to evidence a determination on the part of the majority group of the councilmen to arbitrarily expel duly elected members of the council in order to accomplish some selfish purpose of their own, or for the benefit of their friends.

Moreover, if ground (a) for the alleged contest had been in good faith and was sustained by proof heard, it would not alone entitle the defeated Muncy to a certificate of election or the contest board to declare him elected, notwithstanding a provision to the contrary contained in section 11 of our Corrupt Practice Act, and which is section 1565b-11 of the 1930 Edition of Carroll's Kentucky Statutes. That provision was expressly held by us to be unconstitutional in the case of McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581, and many other cases following it as applicable to general elections. So that, the only pretense of any evidence heard at the alleged contest trial before the council (and it was hearsay only) was on the issue of Hughes violating the Corrupt Practice Act with none to prove that he received any illegal votes. If, therefore, the ground had been proven, Hughes would still be a de facto member of the council until it, not only declared his office vacant, but also took affirmative action to fill the vacancy. No such course was attempted to be

pursued, and whether in such circumstances courts have the authority to interfere and prevent the wrongful installation of a contestant is a question not necessary to be determined.

It is sufficient to say that the judgment was and is correct for at least one all-sufficient reason, and which is, that the order of the council made on January 28, 1936, seating Hughes and determining that he had been duly elected, was a final disposition of the case, and the later performance had on May 21 thereafter was coram non judice and void, since such quasi judicial bodies, when so functioning, are to be governed by the res adjudicata doctrine the same as, and for the same reasons that, it applies to duly constituted courts. It is possible that the judgment might be supported on other grounds than the one stated, were it necessary to do so.

Wherefore, for the reasons stated, the judgment is affirmed.