[L. A. No. 17286.   In Bank.—January 31, 1941.]

OLIVE PRORATION PROGRAM COMMITTEE FOR OLIVE PRORATION ZONE No. 1, et al., Petitioners, v. AGRICULTURAL PRORATE COMMISSION et al., Respondents.

Hadsell, Sweet, Ingalls & Lamb and Dan Hadsell for Petitioners.

Earl Warren, Attorney-General, W. R. Augustine and Lucas E. Kilkenny, Deputies Attorney-General, L. A. MacNicol, Farnsworth, Burke & Maddox and James K. Abercrombie for Respondents.

EDMONDS, J.—In this original proceeding, the petitioner, Olive Proration Program Committee for Olive Proration Zone No. 1, seeks a peremptory writ of mandate directing the Agricultural Prorate Advisory Commission and William B. Parker, Director of Agriculture, as successors of the Agricultural Prorate Commission (Stats. 1939, chap. 894; Deering's Gen. Laws, 1937 Ed., vol. 1, Act 143a), to annul two orders made by the latter body. These orders, dated July 26 and August 7, 1939, respectively, purport to terminate the olive proration program theretofore established.

Olive Proration Zone No. 1, embracing the entire state, was created in 1936 under the Agricultural Proration Act. (Stats. 1933, chap. 754, as amended; Deering's Gen. Laws, 1937 Ed., vol. 1, Act 143a.) A program for the prorated marketing of olives was established in 1937, and, as subsequently modified, has since been in effect unless it was concluded by the two orders which have been mentioned.

In 1939, approximately two years after the institution of the program, several persons filed with the respondent commission a petition authorized by section 23 of the act. This section, as then in effect, provided that an application for the termination of any proration program could be filed "by not less than forty per cent of the producers and by the owners of forty per cent of the producing factors of the industry within the zone in which the program is effective." When such a petition was filed, the commission was required to hold a hearing to determine whether it was signed by persons representing the specified percentage of producers and factors. If, upon such hearing, it was established that the petition was sufficiently signed, it was the duty of the commission to terminate the program.

After notice given, on March 16, 1939, the commission held a hearing upon this petition. Many persons appeared, several of whom, as witnesses or otherwise, voiced their support of or their objections to the marketing program then in effect. There was also considerable testimony to the effect that the signers of the petition were owners of groves or producers of olives to the extent indicated after their respective names. At the conclusion of the evidence, the hearing was adjourned "subject to further call by the commission should it so decide."

No "further call" was ever made or other hearing had. Instead, and on June 27, 1939, more than three months after the conclusion of the hearing, the commission made and entered its findings and order denying the petition to terminate the program. It found that the petition was signed by less than 40 per cent of the olive producers and by less than 40 per cent of the owners of producing factors, and was insufficient in other respects to meet the requirements of the act. The findings recite in detail the grounds for the commission's conclusions and set forth methods employed in making its computations. In form they purport to be a complete and final determination concerning the sufficiency of the petition.

On July 27, 1939, and within the period prescribed in section 17 of the act for a judicial review of any order made by the commission, the respondents Hughes and Isely, two of the proponents of the petition to terminate the program, filed in the Superior Court of Tulare County a petition for writ of mandate to compel the commission to set aside this order and to terminate the program. This proceeding was dismissed when it was later ascertained that on the previous day the commission, by a three to two vote of its members, and without any further hearing or any request therefor, or notice to or consent of any of the interested parties, made an order rescinding its prior order denying the petition to terminate and granted it "subject to a ruling by the Attorney General as to the legal power of the Commission" so to do.

Following this order, the Attorney-General advised the commission that it has the necessary power, under the circumstances shown in the present case, to vacate an order and to enter a new and different order. The commission then made the order of August 7, 1939, which in unqualified terms rescinded its order of June 27, 1939, denying the petition to terminate and granted it. This order was made without any notice to the parties, and was followed by a letter to them in which the commission stated: "This action is based in a large measure on an independent, impartial examination of the petition to terminate Olive Proration Zone No. 1 made by the Division of Budgets and Accounts of the Department of Finance. We have authorized today this Department to release this report to you and all other interested parties."

The petitioner then instituted the present proceeding, joining as respondents not only the commission but also the re-

spondents Wakefield, Gange, Reeves and Stevenson who are proponents of the program, and the respondents Hughes and Isely who petitioned the commission for its termination. This court issued an alternative writ of mandate and thereafter made an order appointing the Honorable Maurice T. Dooling, Jr., as referee, to hear the issues and make findings thereon. After taking considerable evidence, the referee found and concluded, among other things, that the respondent commission had exceeded its authority when on August 7, 1939, it reversed its earlier action and terminated the program.

The first question for determination concerns the commission's jurisdiction to rescind and reverse its order of June 27, 1939, denying, as insufficient, the petition to terminate the program. This order, the referee found, was made "at a time when all evidence produced at the hearing of said petition to terminate said proration program was before said Agricultural Prorate Commission and at a time when said . . . Commission was fully advised with regard to the law and the evidence relating to said petition; and that said findings and order purported to be and were complete, final and binding findings of the . . . Commission with respect to said petition to terminate said proration program and purported to and did constitute a complete, final and binding order of said . . . Commission denying said petition to terminate said proration program."

Under legislation of recent years, administrative bodies are given authority to make orders which cover a wide field. Many of such orders determine facts which will put enactments into effect. (*Dominguez Land Corp.* v. *Daugherty*, 196 Cal. 468 [238 Pac. 703]; *Brock* v. *Superior Court*, 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127]; *Marshall Field & Co.* v. *Clark*, 143 U. S. 649 [12 Sup. Ct. 495, 36 L. Ed. 294]; *J. W. Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394 [48 Sup. Ct. 348, 72 L. Ed. 624].) Others promulgate rules and incidental regulations which are necessary to implement and make effective the more general powers conferred. (*United States* v. *Shreveport Grain & Elevator Co.,* 287 U. S. 77 [53 Sup. Ct. 42, 77 L. Ed. 175]; *United States* v. *Grimaud,* 220 U. S. 506 [31 Sup. Ct. 480, 55 L. Ed. 563].) Ordinarily, the doctrine of *res judicata* may not appropriately be applied to the exercise of such power. (*Wil-*

*bur* v. *United States ex rel. Kadrie,* 281 U. S. 206 [50 Sup. Ct. 320, 74 L. Ed. 809] ; see 49 Yale L. J. 1250, 1253; 52 Harv. L. Rev. 259.)

█ Where orders which relate to what may be rather broadly defined as individual rights are concerned, the question whether the administrative agency may reverse a particular determination depends upon the kind of power exercised in making the order and the terms of the statute under which the power was exercised. As to the first factor, almost without exception, courts have held that the determination of an administrative agency as to the existence of a fact or status which is based upon a present or past group of facts, may not thereafter be altered or modified. (*Muncy* v. *Hughes,* 265 Ky. 588 [97 S. W. (2d) 546] ; *Little* v. *Board of Adjustment,* 195 N. C. 793 [143 S. E. 827] ; *Lilienthal* v. *Wyandotte,* 286 Mich. 604 [282 N. W. 837].) As concisely stated by the New York Court of Appeals, ''officers of special and limited jurisdiction cannot sit in review of their own orders or vacate or annul them''. (*People ex rel. Chase* v. *Wemple,* 144 N. Y. 478 [39 N. E. 397].) But if it is clear that the legislature intended that the agency should exercise a continuing jurisdiction with power to modify or alter its orders to conform to changing conditions, the doctrine of *res judicata* is not applicable. The determination depends upon the provisions of the particular statute.

█ The orders here challenged were made in a proceeding authorized by the Agricultural Proration Act, *supra,* as a means whereby persons in an industry may exercise the rights given to them, as a group, to control the proration of their products. The statute contains no provision in express terms giving the commission authority to change its considered determination, made after a full hearing, and the fact that any order made by it may be reviewed in a judicial proceeding to be commenced within 30 days after its effective date is some evidence of legislative intention to the contrary. And since all administrative action must be grounded in statutory authority, in the absence of a provision allowing a commission to change its determination, courts have usually denied the right so to do.

That principle was recently followed by this court in deciding that the decision of a civil service commission upon the status of an employee was final and conclusive. ''It had no

jurisdiction to retry the question and make a different finding at a later time. The charter gives no such grant of power, and it may not be implied.'' Continuing the court said: ''If the power were admitted, what procedure would govern its exercise? Within what time would it have to be exercised; how many times could it be exercised? Could a subsequent commission reopen and reconsider an order of a prior commission? And if the commission could reconsider an order sustaining a discharge, could it reconsider an order having the opposite effect, thus retroactively holding a person unfit for his position? These and many other possible questions which might be raised demonstrate how unsafe and impracticable would be the view that a commission might upset its final orders at its pleasure, without limitations of time, or methods of procedure.'' (*Heap* v. *City of Los Angeles,* 6 Cal. (2d) 405, 407 [57 Pac. (2d) 1323].)

■ These conclusions make it unnecessary to consider the contention that the last two orders of the commission are void because not made upon a hearing, as contemplated by the statute. However, as has been stated, the order of August 7th, according to the commission, was based, ''in a large measure'', on a field survey and report requested by the commission and made by the Department of Finance after the hearing of March 16, 1939. The parties were not apprised that this survey was being made or of the result of it until after the last order of the commission was promulgated. As a result they were denied all right of cross-examination with respect thereto and also of an opportunity to make a counter showing in rebuttal. Under such circumstances, the statutory requirement of a hearing was not met. (*Morgan* v. *United States,* 304 U. S. 1 [58 Sup. Ct. 773, 82 L. Ed. 1129]; *Interstate Commerce Com.* v. *Louisville & N. R. Co.,* 227 U. S. 88 [33 Sup. Ct. 185, 57 L. Ed. 431]; see 52 Harv. L. Rev. 509.) Only evidence which the opposite party has an opportunity to refute at the hearing may be relied upon as the basis of a finding. (*United States* v. *Abilene & So. Ry. Co.,* 265 U. S. 274 [44 Sup. Ct. 565, 68 L. Ed. 1016].)

The Attorney-General defends the commission's use of the report of the Department of Finance upon the authority of *Ray* v. *Parker,* 15 Cal. (2d) 275 [101 Pac. (2d) 665]. In that decision, he insists, this court upheld an administrative order based upon hearsay evidence. But the evidence which

is challenged in the present case was secretly received by the commission after it had determined the issues presented by the petition to terminate. In the Ray case, although the Director of Agriculture did not offer in evidence all of the documentary evidence he relied upon to support his order, "he did, in substance, place before each hearing the 'result' of his investigation and surveys, and the expert assistant . . . who had made the same was available and was in many instances subjected to examination by those present at the hearings".

■ Also, the record does not support the contention that counsel for respondents Wakefield, Gange, Reeves and Stevenson stipulated at the hearing before the respondent commission on March 16, 1939, that such subsequent field survey and report might be made by the Department and employed by the commission in determining the sufficiency of the petition to terminate. Aside from the fact that counsel for these respondents was neither authorized nor entitled to stipulate for and to bind all parties appearing at the hearing, it appears that, as the referee concluded, the stipulation covered merely a check of the sufficiency of the petition to terminate against the zone records. The stipulation did not purport to authorize a later field survey and report.

■ Also, the investigation conducted by the Department of Finance was not one which may be said to have been made by the commission under the authority of section 23 of the Agricultural Proration Act, *supra*. That section allows the commission to "initiate an investigation on its own motion to determine whether or not the facts [warranting a proration program] . . . continue to exist." But the present proceeding to terminate proration, initiated by certain growers and producers, is an entirely different one from that contemplated by the quoted provision of section 23, and the action of the commission in secretly receiving and considering evidence after the conclusion of the hearing cannot be justified under it.

■ After the referee filed his report, the respondents Hughes and Isely moved this court for leave to introduce additional evidence showing that there are now no conditions justifying the continuance of proration. They assert that because of the war abroad, olives produced in the European and Mediterranean countries are not now reaching the United

States, and California growers do not need the benefit of proration in order to receive maximum returns for their crops. But the only issue which the commission could decide in the proceeding before it was the sufficiency of the petition. If the petition was signed by the requisite number of producers and owners of producing factors, it was the duty of the commission, under the law as then in force, to terminate the program regardless of other facts. The evidence sought to be introduced by respondents Hughes and Isely would not be relevant to that issue even if it might be received at this late date.

As another ground justifying its action, the commission asserts that its last order should be upheld because the evidence upon which it is based, although received after the conclusion of the hearing, may be reviewed in the judicial proceeding authorized by the act. To approve such a practice would mean that an administrative body could base a finding and order on information or reports secretly received without the knowledge of the parties, and successfully defend that action by answering that the remedy of the one aggrieved by the decision is to challenge the data or evidence in a later judicial proceeding. That is not the procedure provided for by the statute.

The motion to take additional evidence is denied. Let a writ of mandate issue requiring the respondent commission to annul its orders of July 26 and August 7, 1939.

Traynor, J., Shenk, J., Carter, J., Peters, J., *pro tem.*, and Ward, J., *pro tem.*, concurred.

Gibson, C. J., deeming himself disqualified, does not participate in this decision.