[Civ. No. 15240. Third Dist. July 26, 1976.]

CALIFORNIA OPTOMETRIC ASSOCIATION,
Plaintiff and Respondent, v.
JEROME A. LACKNER, as Director, etc.,
Defendant and Appellant.

502

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and John Fourt, Deputy Attorneys General, for Defendant and Appellant.

Wilke, Fleury, Hoffelt & Gray, Thomas G. Redmon and Richard H. Hoffelt for Plaintiff and Respondent.

Rosenthal & Leff as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**FRIEDMAN, J.**—The Director of the state Department of Public Health is required to adhere to the Administrative Procedure Act (specifically Gov. Code, §§ 11420-11427) in adopting rules and regulations establishing the rates which the state will pay for health care supplied to Medi-Cal patients. (Welf. & Inst. Code, §§ 10553.1, 10554, 10554.1, 14105, 14124.5; *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].)

The present appeal stems from a declaratory relief action filed by the California Optometric Association ("Association") challenging the procedure utilized in adopting a regulation fixing rates for optometric services and eye appliances. The trial court entered a declaratory judgment in favor of the Association and against the Director of Health ("Director") invalidating the regulation and, in Paragraph 2, setting forth a

declaration of the Director's duties in the future promulgation of such regulations. The Director appeals only from Paragraph 2 of the judgment. That paragraph is quoted in the margin.[1] We have italicized the phraseology forming the particular targets for the Director's attack on appeal.

This is the third appeal in this court challenging the Medi-Cal agency for failure to comply with the rule-adoption provisions of the California Administrative Procedure Act ("APA").[2] In 1970 we nullified a regulation fixing nursing home rates, declaring that "the adoption and repeated amendment of the regulation are characterized by serious procedural vices which prevent meaningful judicial review and frustrate any attempt to pass upon its substantive compliance . . . ." (*California Assn. of Nursing Homes etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d at p. 810.) In 1973 we filed an unpublished opinion invalidating a pharmaceutical rate regulation for noncompliance with the APA. (*Pharmaceutical Manufacturers Assn.* v. *Brian,* 3 Civ. 13962.) In this appeal the Director does not challenge the trial court's invalidation of his predecessor's optometric regulation. He does attack the declaratory judgment's delineation of his future rule adoption procedure, arguing that its demands are more restrictive than those of the APA itself.

■ The Association points out that the challenged declaratory judgment is identical to judgments which the superior court entered after remand in *California Association of Nursing Homes etc., Inc.* v. *Williams, supra,* and *Pharmaceutical Manufacturers Assn.* v. *Brian, supra.* It

---

[1] "2. It is the statutory duty and obligation of defendant to promulgate and adopt a valid and legal regulation or valid legal regulations, establishing rates of payment for Optometry and Eye Appliances in the Medi-Cal Program pursuant to *public hearings* at which:

"(a) The evidence upon which the defendant relies in establishing said rates is *presented and made a part of the record*;

"(b) The regulations and rates established *are based solely on the evidence in such record*;

"(c) Any interested person can present statements, arguments, contentions or evidence and can be sworn under oath in the event oral testimony is taken;

"(d) All relevant evidence is compiled, presented and kept for transmission to the court for judicial review;

"(e) Any interested person is provided *the right of reasonable cross-examination* with respect to any testimony or other evidence which is adduced at the hearing and the opportunity to rebut such testimony or evidence;

"(f) The defendant receives and considers the evidence presented and *makes findings based only on such* evidence."

[2] In justice to the incumbent Director, we observe that all challenges have arisen as a result of action or inaction on the part of earlier administrators of the Medi-Cal program.

contends that the rule of collateral estoppel prevents the incumbent Director from challenging a judgment identical to that imposed upon his predecessors in office.

The rule of collateral estoppel is a manifestation of the principle of res judicata. (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880-881 [299 P.2d 865].) The courts will not apply that principle to foreclose the relitigation of an issue of law covering a public agency's ongoing obligation to administer a statute enacted for the public benefit and affecting members of the public not before the court. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 872 [127 Cal.Rptr. 110, 544 P.2d 1310]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control,* 57 Cal.2d 749, 758 [22 Cal.Rptr. 14, 371 P.2d 758]; 2 Davis, Administrative Law Treatise (1958) § 18.03, pp. 558-559.) The Director of Health is not estopped by the prior judgments.

■ In adopting regulations establishing rates or prices the Medi-Cal agency exercises a quasi-legislative function; there is no constitutional requirement for any hearing in a quasi-legislative proceeding; hence, the promulgation proceeding is statutory and does not arouse the demands of procedural due process. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832-835 [27 Cal.Rptr. 19, 377 P.2d 83]; *Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 548-549 [225 P.2d 905]; *Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 587 [71 Cal.Rptr. 739].) The APA is expressly designed to establish "basic minimum procedural requirements" governing the rulemaking process. (Gov. Code, § 11420.)[3] It calls upon the adopting agency to provide notice of its proposal, including a statement of the time, place and nature of proceedings for the proposal's adoption. (§ 11424.) It gives interested parties an opportunity to present statements and arguments at the time and place specified in the notice and calls upon the agency to consider all relevant matter presented to it. (§ 11425.)[4] Finally, it provides that any interested

[3]All statutory references in this opinion will be to the Government Code unless otherwise noted.

[4]Section 11425 is of particular importance and we quote it in full: "On the date and at the time and place designated in the notice the state agency shall afford any interested person or his duly authorized representative, or both, the opportunity to present statements, arguments, or contentions in writing, with or without opportunity to present the same orally. The state agency shall consider all relevant matter presented to it before adopting, amending or repealing any regulation.

"In any hearing under this section the state agency or its duly authorized representative shall have authority to administer oaths or affirmations, and may continue or postpone such hearing from time to time to such time and at such place as it shall determine."

person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court. (§ 11440.)

■ One objective of the APA is assurance of meaningful public participation in the adoption of administrative regulations by state agencies; another is creation of an administrative record assuring effective judicial review. (*California Assn. of Nursing Homes etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d at pp. 810-812.)

■ Contrary to assumptions that the APA embodies a "notice and hearing" requirement, the Attorney General points out that it does not expressly demand a public hearing; that Government Code section 11425 (fn. 4, *ante*) permits written statements from interested parties "with or without opportunity to present the same orally." He reasons that the act demands of the agency only that it fix a time and place for the reception of written statements; that the agency may then close the public portion of the proceeding; that it may consult evidence not incorporated in a hearing record and made available to interested parties; that even when an oral hearing takes place, the agency need not permit cross-examination and rebuttal.

The assertion that a public hearing is optional has not been considered by the California courts. As the Attorney General observes, the APA does not in terms demand a public hearing in the sense of an oral convocation. In prior decisions construing the Administrative Procedure Act, this court has referred to the "hearing" process but without really inquiring whether the act guarantees interested parties the right to appear in person and to address the agency orally. (*Schenley Affiliated Brands Corp.* v. *Kirby* (1971) 21 Cal.App.3d 177, 193 [98 Cal.Rptr. 609]; *California Assn. of Nursing Homes* v. *Williams, supra,* 4 Cal.App.3d at pp. 810-812.)

Administrative law concepts draw a distinction "between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other." (*United States* v. *Florida East Coast R. Co.* (1973) 410 U.S. 224, 244-246 [35 L.Ed.2d 223, 238-240, 93 S.Ct. 810].) There is also a distinction between evidence of "private facts" whose incorporation in a hearing record is an indispensable condition of fairness and evidence of "public conditions" available to anyone who cares to investigate. (*Schenley Affiliated Brands Corp.* v. *Kirby, supra,* 21

Cal.App.3d at p. 198; *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d at pp. 589-590.) A related distinction is that between adjudicative facts ("roughly the kind of facts that go to a jury") and legislative facts ("general facts which help the tribunal decide questions of law and policy and discretion"). (1 Davis, *op. cit.,* § 7.02, p. 413; *Id.,* §§ 7.04-7.07, pp. 420-437.)

The declaratory judgment errs by making a fixed demand for trial-like hearings in Medi-Cal rate adoption proceedings. That demand is inconsistent with section 11425, which invests the agency with discretion to proceed without supplying an opportunity for oral presentation. Section 11425 permits a purely documentary proceeding yet, in its last paragraph, refers to the proceeding as a "hearing." Thus, contrary to superficial assumptions, it does not necessarily demand a hearing characterized by oral testimony and oral argument. The section was part of the rulemaking procedure added to the California APA in 1947. The California proposal was modeled after cognate provisions of the federal Administrative Procedure Act. (Kleps, *The California Administrative Procedure Act* (1947) 22 State Bar J. 391; Report, *State Bar Committee on Administrative Agencies and Tribunals* (1945-1946) 21 State Bar J. 161.) The federal act embodies no fixed demand for an oral evidentiary hearing; it authorizes the agency to permit only written statements and presentations. (5 U.S.C. § 553; *California Citizens Band Assn.* v. *United States* (9th Cir. 1967) 375 F.2d 43, 50, cert. den. 389 U.S. 844 [19 L.Ed.2d 112, 88 S.Ct. 96].) In related federal legislation, the word "hearing" does not by its own force require the agency to hear oral testimony or argument or to permit cross-examination. (*United States* v. *Florida East Coast R. Co., supra,* 410 U.S. at pp. 235-236, 241 [35 L.Ed.2d at pp. 233-234, 236-237].) In section 11425, the California act permits a choice of oral advocacy, written presentations or a combination of both.

██ The trial court's fixed-directions for cross-examination and rebuttal are also erroneous. No statutory or decisional doctrine establishes ineluctable rights of cross-examination and rebuttal at quasi-legislative hearings. Absorbing courtroom analogies, the judgment would direct multilateral multiloquence among diverse interests. "There must be a limit to individual argument in such matters if government is to go on." *Bi-Metallic Investment Co.* v. *State Bd. of Equalization,* 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141], quoted in *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d at p. 587.) Decisions requiring or dispensing with cross-examination at quasi-legislative hearings vary with the governing statutes and turn also upon the kind of evidence,

whether factual or argumentative. (See, e.g., *United States* v. *Florida East Coast R. Co., supra,* 410 U.S. at p. 241 [35 L.Ed.2d at p. 236]; *Olive Proration, etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204, 210 [109 P.2d 918]; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 304-305 [101 P.2d 665]; *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d at pp. 587-591; *Emby Foods Inc.* v. *Paul* (1964) 230 Cal.App.2d 687, 702-703 [41 Cal.Rptr. 365].) The clause in section 11425 (fn. 4, *ante*) which permits the agency to proceed without opportunity for oral presentation is quite inconsistent with unyielding rights of cross-examination and rebuttal.

■   The declaratory judgment errs in a third respect by confining the agency to action based exclusively upon evidence admitted at a hearing. In directing the agency to consider "relevant matter," section 11425 (fn. 4, *ante*) impliedly obliges it to exercise good faith, to avoid fixed preconceptions and to be responsive to new insights emanating from the parties' presentations. Possible adoption of a regulation differing from the original proposal is one objective of the hearing process; to confine the agency to the terms of its original proposal would negate that objective. (*Schenley Affiliated Brands Corp.* v. *Kirby, supra,* 21 Cal.App.3d at p. 193.) To restrict the agency to evidence produced at the time and place specified in the public notice would generate undesirable inflexibility. Decisions interpreting parallel statutes have discerned no subversion of statutory purpose, no fundamental unfairness when the agency considers information received after the hearing. (*Ray* v. *Parker, supra,* 15 Cal.2d at pp. 303-304; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 708-710 [74 Cal.Rptr. 313]; *Rivera* v. *Industrial Welfare Com., supra,* 265 Cal.App.2d at pp. 589-590; *Emby Foods, Inc.* v. *Paul, supra,* 230 Cal.App.2d at p. 695.) Neither expressly nor impliedly does section 11425 prohibit consideration of "post-hearing" information.

■   The declaratory judgment would require the agency to prepare and file findings as a step additional to the rule adoption. At this point, too, the judgment imposes a trial-like procedure transcending the demands of the APA. The Association and amici curiae have pointed to no express or implied statutory behest for findings. In the case of a price or rate-setting regulation, the enactment itself forms a set of implied findings.[5]

---

[5]We avoid any implication that findings are impermissible. The federal Administrative Procedure Act directs the agency to incorporate "in the rules adopted a concise general statement of their basis and purpose." (5 U.S.C. § 553(c).)

The challenged paragraph of the declaratory judgment is infused with error. Were modification possible, we would nevertheless refrain from ordering it. In section 11440, the APA offers declaratory relief "as to the validity of any regulation." The present judgment is not confined to a declaration of invalidity; it essays control over the agency's future proceedings, thus extending beyond the scope of review described in section 11440. The challenged declaration exceeds the relief available under the general declaratory relief statute. (Code Civ. Proc., § 1060.) It would dictate a public agency's ongoing administration of statutory functions and impose judicial control upon future rate-fixing activities affecting parties not before the court. Such a judgment ruptures the parameters of declaratory relief; it represents an abuse of judicial discretion. (See *Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 663-665 [118 Cal.Rptr. 100].) The challenged declaration will therefore be annulled in toto.

This opinion is vulnerable to serious misinterpretation. The human and economic importance of Medi-Cal rate regulations (each involving a separate set of health providers) as well as the antecedents and characteristics of this appeal—these evoke some deliberate dicta. The briefs on behalf of the Director of Health do not make clear whether the Director seeks merely to discover the rock-bottom minima of rate-setting procedures or whether he actually intends to utilize them.[6] Like the Administrative Procedure Act itself, this decision deals only with procedural minima. Fulfillment of these minimal directions does not assure procedural invulnerability.

The procedural directions of the APA are designed to promote fulfillment of its dual objectives—meaningful public participation and effective judicial review. (*California Assn. of Nursing Homes etc., Inc.* v. *Williams, supra,* 4 Cal.App.3d at pp. 810-812.) Although implied rather than expressed, these objectives are just as statutory and just as binding as the APA's itemized directions. Compliance with procedural minima does not necessarily achieve these goals. Administrative agencies have wide latitude in fashioning procedures for the pursuit of their inquiries. (*Id.,* at p. 813.) In *Rivera, supra,* we pointed out that reception and consideration of post-hearing evidence need not result in unfairness. (265

---

[6]Here, in the context of optometric rates, the Director objects to demands for public hearings, for oral evidence, for examination of witnesses by any party and for a decision based solely upon the evidence. Relative to pharmaceutical suppliers, he has adopted a formal regulation calling for hearing procedures approximating those which he challenges here. (See Cal. Admin. Code, tit. 22, § 51513.2, subd. (i).)

Cal.App.2d at pp. 589-590.) Yet we warned that assurances of public participation "cannot be fulfilled by recorded hearings which are paralleled by substantial 'off record' investigations." (*Id.,* at p. 588.)

In *Nursing Homes, supra,* we stated that an agency "may not base its decision upon evidence outside the record and not made available for rebuttal by the affected parties." (4 Cal.App.3d at p. 811.) We pointed out that the APA's goals of meaningful participation and effective judicial review "rest upon the assumption that a body of relevant evidentiary material will be compiled at the hearing, considered by the agency in formulating its order, preserved by it and transmitted to the court for the latter's use when and if review is sought." (*Id.,* at p. 812.) In *Schenley* we pointed out that effective judicial review is impossible without an identified body of the evidence upon which the agency acted. (21 Cal.App.3d at pp. 196-198.)

These declarations were framed with an eye to the California Supreme Court's *Olive Proration* decision, 17 Cal.2d at page 210. There the administrative proceeding foundered on the shoals of a post-hearing assemblage of data which the agency had not made available to the parties.[7] These declarations did not foreclose utilization of supplementary post-hearing information. Relative to rebuttal opportunities, they sought a middle ground between multilateral rebuttal among the contending parties and their legitimate need to confront the body of data upon which the agency intends to act. They meant that the agency may not utilize the public proceeding as a facade for a private decision resting upon privately acquired data. They meant that post-hearing evidence, if any, must be incorporated in an identified body of evidence and preserved for possible judicial review.

The significance of effective judicial review increases in direct ratio with administrative sprawl. Judicial review is usually described in terms of scope or breadth, when the real dimension is depth or intensity. Routine descriptions of judicial review standards form an overlay for deep-seated problems of agency accountability and responsiveness. These qualities cannot be attained without informed judicial review guided by objective criteria. Judicial review frequently focuses upon claims of arbitrariness, that is, that the regulation has no evidentiary

---

[7] The continued hearings authorized by section 11425 (fn. 4, *ante*) supply opportunities for progressive disclosure of data and views which unfold in the course of the agency's study, thus permitting avoidance of the procedural disaster depicted in *Olive Proration.*

support. (*Pitts* v. *Perluss, supra,* 58 Cal.2d at p. 833.) The body of evidence upon which the agency acted is indispensable to pursuit of that inquiry. Unmarked exhibits and influential, off-record staff reports are inimical to informed judicial review. A proceeding which satisfies the minimum standards of the APA may be fatally deficient if it fails to satisfy the act's guarantee of effective judicial review.

A prescription so vague leaves considerable to ad hoc agency practices. A respected analyst of the federal administrative process suggests that indistinct procedural directions stimulate administrators to clothe their actions "in the full wardrobe of adjudicatory procedure" as a protection against judicial reversals. (Wright, *The Courts and the Rulemaking Process: The Limits of Judicial Review* (1974) 59 Cornell L.Rev. 375, 386-388.) If the prior litigation described in this opinion is any token, the California tendency is quite the opposite. Aside from statutory procedural directions, most mortals, including those in government, need all the wisdom they can get. Administrators may indulge in rulemaking with fair assurance of procedural legality by inviting as much public participation as time and staff permit.

The cause is remanded to the superior court with a direction to vacate Paragraph 2 of the judgment. Appellant to recover costs on appeal.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied August 12, 1976.