[Civ. No. 2705. Fifth Dist. Jan. 18, 1977.]

ORIL JESSE BACOM, Plaintiff and Appellant, v.
COUNTY OF MERCED et al., Defendants and Respondents.

**COUNSEL**

Allen, Van Winkle & Ivey, Ronald H. Marks and Dennis A. Cornell for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, John M. Morrison, Bruce J. Braverman, Deputy Attorneys General, Russell M. Koch, County Counsel and Blair H. Checketts, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**THOMPSON, J.**[*]—Appellant herein appeals from a judgment of dismissal after the sustaining of a demurrer without leave to amend to his amended complaint.

Appellant filed a complaint in the nature of a class action in the County of Merced seeking to recover for himself and all others similarly situated in the County of Merced the return of fines paid in cases in which misdemeanor convictions had subsequently been set aside on constitutional grounds, and a recovery of penalty assessments paid by all persons in the State of California in similar situations during the year immediately preceding May 16, 1974. Appellant alleges that on that date he filed a claim with the County of Merced and with the State of California on behalf of himself and all others similarly affected and that said claims were rejected.

Both the County of Merced and the state filed demurrers to the amended complaint, which demurrers were sustained and a dismissal as to both defendants was entered. The grounds of the demurrers set forth were that (1) the state and county were immune; (2) that plaintiff had not properly presented a written claim against the state and county, i.e., not within 100 days of the accrual of the claim; (3) that a finding that a prior conviction is constitutionally invalid does not require a refund of the fines and penalty assessments; and (4) that the complaint does not allege facts necessary to constitute a class action. Since the trial court did not specify upon which ground or grounds the demurrers were sustained and no request was made for such specification, we assume that the demurrers were sustained upon all of the grounds asserted.

█ In considering a demurrer we are of course generally required to accept as true all of the matters properly pled in the complaint, but we may consider such matters as may be judicially noticed. "The complaint is to be read as if it contains all matters of which the court can take judicial notice even in the face of allegations to the contrary." (Citing cases.) (*Saltares v. Kristovich* (1970) 6 Cal.App.3d 504 at p. 510 [85 Cal.Rptr. 866].)

At the threshold of this case as in every class action suit is the question, among other matters, whether there is a cognizable and manageable

[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

class of either plaintiffs or defendants, or both. ■ We also recognize that class actions are favored when their utilization serves the ends of justice. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

However, class actions may not be instituted in situations where their use creates more problems than they solve. As we said in *Devidian* v. *Automotive Service Dealers Assn.* (1973) 35 Cal.App.3d 978 at page 985 [111 Cal.Rptr. 228]: "Decisions of our courts have recognized the imperative that a class action must be viewed in the light of the problems its institution creates for the courts. [Citing *Stilson* v. *Reader's Digest Assn., Inc.*, 28 Cal.App.3d 270 (104 Cal.Rptr. 581).]"

As the California Supreme Court said recently in granting a writ of mandate directing the dismissal of an inappropriate class action (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755], quoting *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 at p. 459 [115 Cal.Rptr. 797, 525 P.2d 701]): " '. . . despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.] It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove nonbeneficial.' "

We shall proceed to analyze the inevitable consequences of the pursuit of the class action herein. Considering first that portion of plaintiff's complaint seeking to recover penalty assessments levied during the period from May 16, 1973, to May 16, 1974, in those cases in which judgments of conviction were vacated upon the *Boykin-Tahl* premise, we note the following. During the year of 1973 more than 14,000 such convictions were vacated on just drunk driving arrests. (Note, *Mills* v. *Municipal Court*: *The Prospective Application of a Modified Boykin-Tahl Rule to Misdemeanors* (1974) 26 Hastings L.J. 233, 250.) We know of no means whereby it may be determined how many more judgments of conviction were vacated as to other misdemeanors except by an examination of the dockets of every municipal and justice court in the State of California. An examination of the jurisdictions listed in section 1463 of the Penal Code discloses, if our count be correct, that there are

300 jurisdictions which are empowered to vacate judgments of conviction in misdemeanor cases. And, of course, many superior courts are also similarly empowered.

K. Uebel, in a paper prepared for the 1973 Institute for Municipal and Justice Court Judges (reprinted in *Proceedings of Judicial Workshop,* Judges, Marshals and Constables Association (Mar. 1974) p. 26) as cited in *Mills* v. *Municipal Court: The Prospective Application of a Modified Boykin-Tahl Rule to Misdemeanors, supra,* estimates that 70 percent of the above-mentioned vacated drunk driving judgments were upon the *Boykin-Tahl* rationale. Only a careful scrutiny of each judgment could determine the basis for the court's order vacating the judgment and whether in fact a particular court had jurisdiction in the matter. And we must remind ourselves that in these figures we are dealing only with drunk driving convictions where some computerized assistance is available through the Department of Motor Vehicles. We have no such aids as to judgments vacated on other misdemeanor convictions. And the computers do not solve jurisdictional problems.

The problem is further compounded by the fact that should plaintiff and his class prevail, the moneys paid in fines or assessments have long since been distributed to multitudinous public agencies, the retrieval of which pose agonizing problems for the agencies concerned. For example, motor vehicle assessments are disbursed according to the provisions of Vehicle Code section 42052, 75 percent to the Driver Training Penalty Assessment Fund and 25 percent to the Peace Officers Training Fund.

Assessments made upon convictions of nonmotor vehicle violations are required to be transmitted by the county treasurer to the State Treasurer who in turn places the funds in the Peace Officers' Training Fund. (Pen. Code, § 13521.) Thereafter, pursuant to sections 13522 and 13523 of the Penal Code, the Commission on Peace Officer Standards and Training makes allocations to counties, cities and districts (police protection districts, any district authorized to maintain a police department, regional parks, to the University of California and to the California State University and Colleges. (Pen. Code, § 13507.)

It may be readily seen that should plaintiff prevail a "chain reaction" situation would develop. Each recipient of moneys found to have been unconstitutionally collected would be sued in turn by the agency from which such moneys had been received. Many of the ultimate recipients

have no taxing powers and their ability to function could be impaired for long periods of time, if not permanently.

We do not represent that we have exhausted the list of examples which could have been given to demonstrate that the prosecution of the class action here proposed with reference to retrieving and disbursing penalty assessments collected from jurisdictions throughout the state would produce difficulties of augean proportions.

We hold that to permit the filing of a class action encompassing the entire state and involving every justice and municipal court, and undoubtedly many superior courts where judgments of convictions on misdemeanors were set aside, would so unduly burden the entire judicial system that any benefits of such a class action would be far outweighed by its burdens. We believe this true without even considering that as to many individual members of the purported class such defenses as laches would probably lie (as to individual members) necessitating the further encumbering of the courts.

We now turn our attention to that portion of the complaint which purports to state a class action only as to those convictions in Merced County which were vacated on constitutional grounds. Merced County is, of course, but a microcosm of the larger problem, but even as to a relatively small county the consequences of permitting the class action here sought to proceed would produce the consequences described in *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 at page 310 [110 Cal.Rptr. 329, 515 P.2d 273] to ". . . have a seriously detrimental effect on the administration of justice which far outweighs the possible benefits to be gained from such application." (Retroactivity.)

We also note that in *McDermott* v. *Superior Court* (1972) 6 Cal.3d 693 at page 698 in footnote 3 [100 Cal.Rptr. 297, 493 P.2d 1161], the court recognized that to require reimbursement of admittedly invalidly collected penalty assessments would irreparably injure the Peace Officers' Training Fund and, therefore, by failing to act promptly before the transfer was made from the State Treasurer to the Peace Officers' Training Fund the claimant was estopped from now seeking a refund: "Waiver is the intentional relinquishment of a known right with knowledge of the facts. (*Roesch* v. *De Mota* (1944) 24 Cal.2d 563 [150 P.2d 422].) The estoppel would be predicated on the bailee's failure to reinstate his bail and penalty assessment resulting in the transfer of the penalty assessment to the Peace Officers' Training Fund where, within the statutory scheme,

the funds transferred were utilized and expended for proper objectives. Should that fund now be required to divulge or reimburse those transfers, it would be irreparably injured. The bailee, accordingly, is estopped from repudiating his conduct or omissions which resulted in placing the penalty money at the disposal of the Peace Officers' Training Fund. (See *Altman* v. *McCollum* (1951) 107 Cal.App.2d Supp. 847, 861-863 [236 P.2d 914].)"

In the present case, by failing to secure refunds of fines paid before their disbursal by the State Treasurer, a situation has been created whereby the fines as well as the assessments have been further disbursed by the Commission on Peace Officers' Standards and Training which has allocated portions of these funds in Merced County as elsewhere to cities, police protection districts, colleges, etc. To now require all these various entities to "fork over" what they understandably believed was theirs to use would produce frightening consequences, such as the disbanding of training programs for reserve police officers and many other essential programs for better law enforcement.

We have not been cited any authority nor have we found any in which the question of retroactivity has been addressed with respect to the precise situation here where a return of money is sought upon the basis of a law subsequently declared unconstitutional, but not retroactively so. The case of *United States* v. *Lewis* (E.D.La. 1972) 342 F.Supp. 833 affirmed, *United States* v. *Lewis* (5th Cir. 1973) 478 F.2d 835, cited by appellant is not in point for there retroactive application was given to the law there found to be unconstitutional.

On the other side of the coin, the California Supreme Court in *In re Tahl* (1969) 1 Cal.3d 122 at page 135 [81 Cal.Rptr. 577, 460 P.2d 449] in rejecting retroactive application of the doctrines announced in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] stated: "To invalidate all such prior guilty pleas years and decades after their acceptance would have a dolorous effect upon the administration of justice. (See *Johnson* v. *New Jersey* (1966), *supra*, 384 U.S. 719, 731 [16 L.Ed.2d 882, 891, 86 S.Ct. 1772].) In light of these combined legal and pragmatic factors, we believe *Boykin* v. *Alabama* and the procedures adopted herein must be given prospective application only. . . ."

In the case of *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288 in holding that the *Boykin* standard must be applied to misdemeanor cases but not retroactively so the court said at page 310: "Since the *Boykin* decision in

June 1969, many thousands of guilty pleas have been entered in misdemeanor proceedings. If we were to apply the present decision retroactively, we would undoubtedly invalidate many of these convictions, convictions which, although lacking explicit 'on the record' waivers, for the most part resulted from voluntary and intelligent guilty pleas." The court in *Mills* then goes on to quote from *In re Tahl, supra,* with regard to the "dolorous" effect retroactive application would have upon the administration of justice.

We think that to permit appellant in this case to pursue a class action would produce consequences equally "dolorous" to the administration of justice both as to the entire state and to the County of Merced. We think that our previous recitals of the problems that would be created, brief as they were, demonstrate that appellant has not brought his class action predicated upon a manageable class in any "pragmatic" sense, to use the language in *In re Tahl.*

It would be truly ironic if under the doctrines announced in *Mills* v. *Municipal Court,* we should be compelled to grant financial relief to the "lucky" who petitioned to have their convictions (chiefly pleas of guilty) set aside, but who did not at that time ask for repayment of their fines and or assessments and at the same time apply the *Mills* v. *Municipal Court* doctrine which denied retroactive relief to the very plaintiff in that case even as to his criminal conviction, a much more significant deprivation than mere financial reimbursement.

In view of the primacy of our ruling as found by the trial court that no manageable class has been defined, a discussion of the other grounds of demurrer would serve no purpose.

The judgment of dismissal is affirmed.

Franson, Acting P. J., and Goldstein, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.