[No. D005383. Fourth Dist., Div. One. Nov. 19, 1987.]

BLAS REYES et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SAN DIEGO COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Peter M. Liss, Anson B. Levitan, Colleen Fahey Fearn, Carol L. Bracy and Charles Wolfinger for Plaintiffs and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, Barbara Baird and Arlene Prater, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**WORK, J.**—Blas Reyes and the Welfare Rights Organization of San Diego, Inc. (Plaintiffs), brought this class action for declaratory and injunctive relief against the San Diego County Board of Supervisors and Department of Social Services (County) to stop the practice of depriving general relief recipients of benefits for failing to comply with work project rules without distinguishing between willful and nonwillful violators and to recover past benefits lost from such illegal terminations. They appeal that portion of the trial court's order denying its motion for class certification as to retroactive relief. They contend the class for retroactive benefits is ascertainable and meets all proper community of interest requirements necessary for certification, asserting the trial court improperly relied on the County's potential administrative burdens at the remedy stage of determining class identity and individual claimant entitlements. For the reasons which follow, we conclude the trial court abused its discretion in denying Plaintiffs' motion for class certification as to retroactive relief. Accordingly, we reverse its order in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Welfare and Institutions Code[1] section 17000, requires every county to provide general relief to all incompetent, poor, indigent and incapacitated individuals who are not supported by relatives, friends or state or private relief. ■■■ Financed entirely out of County general funds, this program was designed to be the residual financial "safety net" for indigents who cannot obtain relief from any private sources and cannot qualify for aid under any specialized state or private program. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231].)[2]

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] It is settled that section 17000 imposes a mandatory duty upon the County to support its indigent and disabled. (*Mooney v. Pickett, supra,* 4 Cal.3d at p. 676; *Nelson* v. *Board of Supervisors* (1987) 190 Cal.App.3d 25, 29 [235 Cal.Rptr. 305]; *Jennings* v. *Jones* (1985) 165 Cal.App.3d 1083, 1092 [212 Cal.Rptr. 134]; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712].) The underlying legislative purpose of this duty " 'is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed.' " (*Jennings v. Jones, supra,* 165 Cal.App.3d at p. 1091, quoting section 10000.)

Pursuant to this mandate, the County established a general relief pro-. gram divided into two essential parts, providing assistance to those employable and eligible for benefits under section 17000 and those who are incapacitated and unemployable by reason of age, disease, or accident. Those recipients who are employable must participate in work projects as a condition of obtaining relief.[3] Employable recipients work up to 72 hours per month on a county work project at the federal minimum wage to repay any grant. During their off-hours, these employable recipients must seek employment and accept any job paying the minimum wage. They are required to submit job applications to different employers each month and provide proof of such job contact to the County. Consequently, the following conditions must be met by an employable recipient before relief will be continued: (1) attendance and participation in the assigned work project; (2) submission of four written job applications per month; and (3) filing a monthly status report and interview. Failure to comply with any welfare program requirement without good cause results in a recipient being "sanctioned" by a period of ineligibility or denial of relief for three months on the first noncompliance and six months for a second within a twelve-month period. Failure to timely return a job-search verification results in the loss of aid for one month.[4]

Relying on *Jennings* v. *Jones, supra,* 165 Cal.App.3d at pages 1092-1093, Plaintiffs' lawsuit essentially contends the sanctioning process of the County's program fails to distinguish between the competent healthy recipients who *willfully* fail to comply with the underlying requirements of the program and those whose failure is the result of mere negligence, inadvertence, or mental or physical disability. The class action complaint seeks injunctive and declaratory relief, claiming the County's practice of terminating general relief benefits without distinguishing between willful and nonwillful violations of its work project rules violates substantive due process. The action further asks the court to require the County to provide advance notice of terminations for alleged work project violations so recipients can request continued benefits pending an administrative hearing consistent with the constitutional guarantee of procedural due process. Petitioners also seek a peremptory writ of mandate ordering the County to provide timely and adequate notice of actions to sanction individuals, to provide full discovery of evidence for and during hearings, to cease enforcement of its sanctioning process, to implement regulations requiring County to sanction only

---

[3] Such work as a condition of relief is authorized by section 17200 and is designed to assist in the recipient's rehabilitation and the preservation of his or her self-respect.

[4] This sanctioning process parallels those found in state and federal work incentive programs. (42 U.S.C. § 602(a)(19)(F); § 11308 [AFDC work incentive program, providing a sanction of three months for the first offense and six months for the second offense where a registrant fails without good cause to comply].)

healthy, competent individuals who willfully fail to comply with the program requirements, and to identify and set aside all actions sanctioning class members since April 10, 1983, restoring prospective benefit to currently sanctioned individuals, providing notice of eligibility to apply for retroactive benefits to class members, and providing hearings for such individuals to determine eligibility for benefits.

Plaintiffs' motion for class certification was granted insofar as it sought to certify a class of all individuals who will be sanctioned by the County and deprived of general relief benefits on or after the date of entry of final judgment.[5] However, with regard to retroactive relief to *all individuals who have been sanctioned by the County's relief program since April 10, 1983, to the date of entry of the final judgment,* certification was denied. The trial court rationalized its denial of retroactive benefits to a class estimated to be comprised of 15,000 individuals, because determination of class identity and entitlement to relief at the remedy stage rendered the class unascertainable and unmanageable. The court explained: "I think that in this instance the class does not fit into the traditional class where it is a mechanical calculation . . . to determine the entitlements of the class, but merely requires individual hearings as to the willful nature of the violations and the determination of liability on a case-by-case basis.

"That really does not suit class certification as far as retroactive benefits are concerned. It seems to me that those parties who still have rights may pursue them, if they wish, certainly, individually. But this is all we're doing, if we order the class certification, would be to just renotice people that they had a right to assert their individual actions and have administrative hearings on each one. I don't think that suits the standard of the class litigation. It certainly becomes unmanageable from the county view and I think the *Metcalf* vs. *Edelman* case is on point in this matter, which would prohibit the determination of the class.

"Certainly, the county has indicated their willingness to have this order made without prejudice to renewal of a more determinable, manageable class that didn't require the individual determinations of, really, a mini trial

---

[5] The County asserts in passing that class certification here for purposes of prospective relief was unnecessary, because the complaint sought injunctive and declaratory relief where a final judgment will, as a practical matter, produce the same result as formal classwide certification (*LaMadrid* v. *Hegstrom* (D.Ore. 1984) 599 F.Supp. 1450, 1452) and there exists no reason to doubt it would accord to all members of the proposed class the benefits of any favorable judgment obtained (*Kow* v. *New York City Housing Authority* (S.D.N.Y. 1981) 92 F.R.D. 73, 74). However, acknowledging it was nonetheless within the trial court's discretion to grant class certification as to prospective relief (*Montgomery* v. *Rumsfeld* (9th Cir. 1978) 572 F.2d 250, 255), the County has not appealed. Accordingly, we do not address the merits of this potential contention on this appeal.

as to each party to determine whether or not they are indeed entitled to the benefits or the rights of which they were alleged to be deprived. . . . "

## GOVERNING LAW

Class actions serve an important role by establishing a judicial process within which claims of many individuals can be resolved simultaneously, eliminating repetitive litigation and providing claimants with a practical method of securing redress for claims which because of their size do not warrant individual litigation. Consequently, courts and legislatures have developed and transformed this former, limited equity device to a contemporary tool designed to meet the needs of modern society. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469 [174 Cal.Rptr. 515, 629 P.2d 23].) ■ The class action has now become "a 'peculiarly appropriate' vehicle for providing effective relief when, as here, a large number of applicants or recipients have been improperly denied governmental benefits on the basis of an invalid regulation, statute or administrative practice. [Citations.]" (*Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 265 [178 Cal.Rptr. 612, 636 P.2d 575].)[6]

In California, Code of Civil Procedure section 382 authorizes class action suits "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (See *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Miller* v. *Woods* (1983) 148 Cal.App.3d 862, 872 [196 Cal.Rptr. 69].) This provision has been construed to require the showing of an ascertainable class and a well-defined community of interest in questions of law and fact among the members of that class. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750], *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; *Stephens* v. *Montgomery Ward & Co.* (1987) 193 Cal.App.3d 411, 417 [238 Cal.Rptr. 602].) However, in light of the general character of

---

[6]"It is well settled that class actions are an appropriate procedure in government benefit cases where statutes and policies are likely to have an impact upon a broad class of recipients. Recognized advantages of government benefit class actions include mootness avoidance, the tolling of the statute of limitations, the enhancement of the effectiveness of a final judgment, and the adequacy of satisfaction of the exhaustion of administrative remedies requirement by the named plaintiff on behalf of all class members. (Fns. omitted.)" (4 Newberg on Class Actions (2d ed. 1985) § 23.07, p. 204.) Moreover, class actions for injunctive or declaratory relief serve the additional objectives particularly important in government benefits litigation, including institutional changes, "facilitating enforcement of a favorable judgment, and protecting the interests of affected class members from the burden of bringing individual actions to establish the applicability of a decision for their benefit. (Fns. omitted.)" (*Id.* at § 23.11, p. 210.)

Code of Civil Procedure section 382 which fails to define a procedural framework for class certification, the courts have sought guidance from both Civil Code section 1781 regarding consumer class actions and the Federal Rules of Civil Procedure, rule 23, in the absence of state precedent. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at pp. 469-470, fn. 7; *Green* v. *Obledo* (1981) 29 Cal.3d 126, 145-146 [172 Cal.Rptr. 206, 624 P.2d 256]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Schneider* v. *Vennard* (1986) 183 Cal.App.3d 1340, 1345 [228 Cal.Rptr. 800].)

■ Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class members. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 821-822; *Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 873.) ■ As to the community of interest requirement, it consists of three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 874.)

■ The decision whether to certify a class rests within the sound discretion of the trial court (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Schneider* v. *Vennard, supra,* 183 Cal.App.3d at p. 1345) and will not be disturbed on appeal if supported by substantial evidence, unless either improper criteria were employed or erroneous legal assumptions were made. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470; *Schneider* v. *Vennard, supra,* 183 Cal.App.3d at p. 1345; *Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 872.) Trial courts have been admonished to carefully weigh the respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to the litigants as well as the courts. (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755]; *Occidental Land, Inc.* v. *Superior Court, supra,* 18 Cal.3d at p. 360; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 810; *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 67-68 [231 Cal.Rptr. 683].) The party seeking class certification bears the burden of not only showing that substantial benefits, both to the litigants and to the court, will result from class certification (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 460; *Collins* v. *Safeway Stores, Inc., supra,* 187 Cal.App.3d at p. 68), but also proving the adequacy of its representation (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470). At the certification stage, just as the trial court is not to examine the merits of the case, our inquiry on

review is strictly limited to whether plaintiffs have carried their burden of establishing the prerequisites of a class action. (*Stephens* v. *Montgomery Ward & Co., supra,* 193 Cal.App.3d at p. 418.) "Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question. [Citations.]" (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 478.)

## PLAINTIFFS' CONTENTIONS AND THE COUNTY'S RESPONSE

Plaintiffs contend they have met their burden of establishing not only an ascertainable class, but also a well-defined community of interests among their class members. They assert the trial court erroneously relied on the County's *potential* administrative burdens at the postjudgment remedy stage of determining class identity and individual claimant entitlement to relief, when it denied class certification for retroactive benefits. They argue the determination of class certification in government benefits cases involves the primary concern of the *court's* role in trying the case, not the *administrative agency's* duties in providing legally required relief to those who prove they are members of the class. Consequently, because the issues of class member identity and relief entitlement are not determined by the court, they are irrelevant to the class certification decision. Moreover, they contend the County's remedial concerns here were based upon unsupported assumptions that determinations regarding past benefits would be unduly administratively burdensome.

The County responds certification was properly denied because the validity of its actions as to any specific recipient must be individually factually determined and thus it is possible the challenged sanctioning process may have been invalidly applied to only a few members of the broadly defined class. (*Dale* v. *Hahn* (2d Cir. 1971) 440 F.2d 633, 640; *Burchette* v. *Dumpson* (E.D.N.Y. 1974) 387 F.Supp 812, 820; *Mays* v. *Scranton City Police Dept.* (M.D.Pa. 1979) 87 F.R.D. 310, 315.) Consequently, because each recipient's right to recover depends on the facts peculiar to his/her case, the County asserts the trial court properly exercised its discretion since even if the plaintiffs prevail in their action, each member of the class in order to recover must establish through the administrative process his/her violation was in fact "nonwillful," general eligibility for relief, the nature of the violation and the existence of any defenses. (See, e.g., *Fischer* v. *Dallas Federal Sav. and Loan Ass'n* (N.D.Tex. 1985) 106 F.R.D. 465, 470-471; *Rice* v. *City of Philadelphia* (E.D.Pa. 1974) 66 F.R.D. 17, 20.) In short, the County asserts the right to monetary relief depends entirely on factual issues peculiar to each case, emphasizing liability and proof of damages cannot be determined here in an easily calculable, mechanical manner. Accordingly, the County argues there is no sufficiently ascertainable class

with a well-defined community of interest in questions of law and fact to permit class certification. It contends the class is unascertainable, not because the definition is unduly complex, but rather because the cost to the County both in time and money to manually cross-compare statistical records of 15,200 sanctions imposed since April 10, 1983, is approximately eight months of staff time and $14,000 in salary.[7]

The County also argues manageability is a proper factor for the court to consider in determining class certification, citing the total administrative cost here of processing approximately 7,600 claims (approximately one-half of the 15,200 sanctions imposed during the time involved) would be approximately $257,000 and exhaust six and one-half years of staff time. It claims retroactive relief here would be without substantial benefit to the class members in comparison to the administrative burden imposed. ■ ■ ■ Citing section 17403, the County explains that because general relief must be repaid by a recipient when one has the means to do so, retroactive payments to rehabilitated individuals would result in simply debts due to the County.[8] Moreover, it contends current general relief recipients would suffer from the enormous expenditure of administrative resources in attempting to afford retroactive relief because it would be better for the general public to keep the funds in the public treasury for public use than to

---

[7] The County's program manager, Income Maintenance Bureau, Department of Social Services, stated in her declaration: "To generate a list of plaintiff class members by manually cross-matching existing records would require the following tasks: [¶] a) Examine the monthly printouts showing 'negative actions' for all Income Maintenance programs (we do not have a separate printout for General Relief) to identify only those cases which are General Relief cases *and* which were closed for the reason that a sanction was imposed. This would mean looking at some 2,000 pages of printouts covering the relevant time period, and creating the list, expected to include over 15,000 cases. [¶] b) To obtain the addresses corresponding to the sanctioned cases, it would be necessary to call each case up on the computer terminal and then to record the address shown on the master list. [¶] c) Finally, to generate mailing labels, it would be necessary to type the entire list (consisting of over 15,000 cases) into our word processing system."

[8] The validity of this contention is doubtful. First, section 17403 provides the County with a claim against one for whom the County supported with public funds only if the former recipient has later acquired property in excess of personal and familial support needs. (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 37 [148 Cal.Rptr. 584, 583 P.2d 109].) Second, because general relief grants to employable recipients are conditioned upon participation in County work projects at the minimum wage, we doubt whether section 17403 applies to such conditional grants. Moreover, because the invalid withholding of general assistance funds constitutes a state debt effective as of the date of denial (*Lowry* v. *Obledo* (1980) 111 Cal.App.3d 14, 24 [169 Cal.Rptr. 732]; *Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 436 [102 Cal.Rptr. 708]), we query whether each formerly eligible recipient determined to be entitled to retroactive relief here is so entitled without condition, because at the time of sanction the recipient otherwise qualified for relief. Finally, the fatal flaw to this comment is the County has not proffered any statistical evidence as to how many former recipients meet the qualifications of section 17403, are no longer in need of, or interested in obtaining further assistance.

consume them in attempting to award retroactive relief where the administrative burden is severe and the potential benefit is small.

## AN ASCERTAINABLE CLASS

 Mindful in determining whether a class is ascertainable we examine the class definition, the size of the class and the means of identifying class members (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 821-822; *Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 873), we conclude Plaintiffs' proffered class of "all individuals sanctioned from the County's general relief program since April 10, 1983," is sufficiently defined to meet the "ascertainable" standard.

The County concedes the proposed class as defined is not "unduly complex." It clearly includes all individuals potentially affected by the challenged administrative sanctioning process. (Compare *Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 260, where the class was defined as "all other women 'subjected' to the provisions of [Unemployment Insurance Code] section 1264"; *Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 873, where the class was defined as " 'all applicants, recipients and providers of IHSS in California who have been or will be disqualified from receiving or providing protective supervision based solely on MPP § 30-463.233c.' ") Moreover, the County does not challenge the size of the class, conceding it exceeds 15,000 individuals. Rather, the County asserts the class is not easily ascertainable because it would take approximately eight months of staff time at a cost of $14,000 to manually cross-compare the statistical records of the approximately 60,000 general relief cases closed since April 10, 1983, to identify those individuals whose cases were closed as a result of a sanction. (See, e.g., *Lawson* v. *Brown* (D.Va. 1972) 349 F.Supp. 203, 209.)

 Preliminarily, it is firmly established a plaintiff is not required at this stage of the proceedings to establish the existence and identity of class members. (*Stephens* v. *Montgomery Ward & Co., supra,* 193 Cal.App.3d at p. 419; *Collins* v. *Safeway Stores, Inc., supra,* 187 Cal.App.3d at p. 71; *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 138 [191 Cal.Rptr. 849].) In fact, prejudgment notice is not required in welfare class actions where declaratory and injunctive relief are the primary objectives. "California decisions follow the analysis of the federal courts; prejudgment notice 'serves no apparent purposes' in welfare class actions where there are no factual disputes and the class is adequately represented by counsel." (*Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 875; see also *Gonzales* v. *Jones* (1981) 116 Cal.App.3d 978, 985-987 [171 Cal.Rptr. 567].) However, within the context of manageability, the issue is whether there exist sufficient *means*

for identifying class members at the remedial stage. (See *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 706.) Here, the means are available in that the County does have the records from which to identify those past general relief recipients who were sanctioned out of the welfare program.

However, the County essentially argues the class is unmanageable because of the cited administrative cost in identification at the remedial stage. (See, e.g., *Simer* v. *Rios* (7th Cir. 1981) 661 F.2d 655, 671.) Manageability within this context is intertwined not only with the question of ascertainability, but also the underlying admonishment the Supreme Court has given the trial courts to carefully weigh the respective benefits and burdens of a class action and to permit its maintenance only where substantial benefits will be accrued by both litigants and the courts alike. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 385; *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 459.) ██ Consequently, where the administrative cost in identification and processing of past general relief recipients' claims is so substantial to render the likely appreciable benefits to the class de minimis in comparison, the class action should not be certified. (See, e.g., *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at pp. 385-386; *Bacom* v. *County of Merced* (1977) 66 Cal.App.3d 45, 48-52 [136 Cal.Rptr. 14]; see also *Lawson* v. *Brown, supra,* 349 F.Supp at p. 209, and compare *Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 578-579 [125 Cal.Rptr. 221], where the trial court and the court of appeal acknowledged that identification from government records was readily available, presenting a "relatively uncomplicated problem" involving "neither unreasonable time nor expense.") However, a court should not decline to certify a class simply because it is afraid that insurmountable problems may later appear at the remedy stage. "But where the court finds, on the basis of substantial evidence . . . that there are serious problems *now appearing,* it should not certify the class merely on the assurance of counsel that some solution will be found." (*Windham* v. *American Brands, Inc.* (4th Cir. 1977) 565 F.2d 59, 70.) Consequently, unless the unmanageability of the class action is essentially without dispute or clearly established, it should not foreclose class certification.

██ Here, the County has not shown the administrative cost of retroactive relief outweighs appreciable benefits to the class. Preliminarily, we are unpersuaded the County's selected method of identification and notice is the most practicable and cost-efficient; for, in comparison, how effective and costly would simple notice to all general relief recipients during that period of time be? Moreover, the size of the class in regards to the starting date for payment of retroactive benefits to class members is not established and binding until the trial court grants final relief. Indeed, in order for the County to show the administrative costs are disproportionate to the

potential benefits to the class if the latter should prevail, the County must determine the potential class benefits and compare them to the administrative cost. Disproportionality can only be established by comparing administrative cost figures with the total potential retroactive benefits to the class; for, all such class actions inevitably accrue administrative costs. Consequently, if we take as unchallenged the County's claim of $257,000 in administrative costs, then that figure is not so overwhelming in light of the Plaintiffs' estimate the class has been illegally denied $3.4 million in retroactive benefits. Granted, both parties challenge each other's figures; however, it is precisely these disputes which illustrate the County has failed to establish disproportionality and the propriety of leaving these issues to the discretion of the trial court at the remedial stage. There, the County may raise a specific objection to any remedial mechanism the court, in the exercise of its discretion, fashions to cope with the identification and notice problems arising from the government records and the individual determinations of liability and damages. (*Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 266.) In fact, the Supreme Court explained in *Green* v. *Obledo, supra,* 29 Cal.3d at page 142: "[A]n action by an entire class to recover past welfare benefits withheld pursuant to an invalid regulation or statute might impose, in some circumstances, a disproportionate clerical and financial burden on the governmental entity if such benefits were ordered paid for the entire period of limitations. This could occur, for example, if the regulation or statute had been in force for a number of years at the time of the judgment, if the class were particularly large, or if the potential individual recovery of each class member were small. Accordingly, on such a showing the trial court, acting as a court of equity, has discretion to fix a more realistic starting date for the payment of retroactive benefits to class members."

In summary, the trial court has considerable flexibility in the management of a class action at the remedial stage. Under these circumstances, the County's assertion the certification order here if the class should prevail, will require them to incur undue administrative costs both in identifying and notifying class members should be presented to the trial court postjudgment at the remedial stage. (*Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 266.)

## THE CLASS SHARES A WELL-DEFINED COMMUNITY OF INTEREST IN QUESTIONS OF LAW AND FACT

In determining whether the class satisfies the community of interest requirement, we look to whether common questions of law or fact dominate, the claims of the class representative are typical of the class and the class representative can adequately represent the class in its entirety. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) ■ We conclude

the class for retroactive benefits meets all proper criteria, as the trial court will decide the legality of the County's sanctioning process and the County's existing administrative agency will decide the remaining issues of individual recipient qualification, entitlement and amount of damages. It is undisputed Plaintiffs' claims are typical of those of the class and the Plaintiffs constitute an adequate representative with qualified and experienced counsel able to conduct the proposed litigation. Accordingly, the sole issue presented here is whether there are predominate questions of law or fact common to the class as a whole.

This second statutory requirement of a "community of interest" revolves on "whether the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 810; *Miller* v. *Woods, supra,* 148 Cal.App.3d at pp. 873-874.) This common question requirement is patently satisfied here by the class claim the County has violated state law by failing to distinguish between *willful* violations of work rules by competent healthy adults who may be sanctioned and *nonwillful* violations caused by negligence, inadvertence or mental or physical disability which may not serve as a basis for sanctioning. In other words, the common goal of the entire class is to invalidate this sanctioning process and require the implementation of regulations requiring the County to sanction only healthy, competent individuals who willfully fail to comply with program requirements.

The County challenges this assessment, contending classwide liability cannot be established by the declaratory/injunctive relief phase of this case, because each class member's right to recover depends on facts peculiar to his/her case. The County explains that in order for a class member to recover, that individual must establish at the remedy phase not only damages, but liability—that he/she was a victim of unlawful conduct, to wit sanctioned for nonwillful conduct. Finally, the County stresses that as to each class member, the separate factual issues of eligibility, nature and willfulness of the violation, and the existence of any defenses must be determined.[9]

---

[9] In a similar vein, the County argues that class certification was properly denied because the challenged process was constitutionally applied as to all those sanctioned for willful conduct. Although we grant the likelihood that many within the presently defined class may have been properly sanctioned for willful conduct, we do not believe such a likelihood precludes class certification for purposes of retroactive relief. Rather, the redefining and winnowing down of the class at the remedial stage where notice to the general class requires sanctioning for nonwillful conduct in order to be eligible for retroactive benefits resolves any perceived inadequacy in the definition of the proposed class and any allegation of lack of commonality of interest as to law and fact.

As the Plaintiffs aptly point out, it is precisely the County's sanctioning process which precludes the early determination of whether a past relief recipient was sanctioned for willful or

▮ Granted, there lacks a sufficient community of interest within a class where each member would be required to individually litigate numerous and substantial questions to determine his/her right to recover following the class judgment determining issues common before the class. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d pp. 459-460; *Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215].) However, the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate. (*Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 266; *Hypolite* v. *Carleson, supra,* 52 Cal.App.3d at p. 580; see *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605, 617 [236 Cal.Rptr. 605]; *Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d at p. 140.) In fact, under these circumstances, it is firmly established that "a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages. [Citations.] . . . [A] court can devise remedial procedures which channel the individual determinations that need to be made through existing administrative forums. [Citations.]" (*Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 266.)[10]

▮ Moreover, this community of interest requirement is especially satisfied here, because the trial court would have to redetermine the legality of the County's sanctioning process in each case individually pursued. For, "[t]he courts will not apply . . . [the principle of res judicata] to foreclose the relitigation of an issue of law covering a public agency's ongoing

nonwillful conduct because it never evaluated a recipient's conduct in those terms. Indeed, all terminated past recipients had the right to have legally proper standards apply.

[10] The trial court relied on *Metcalf* v. *Edelman* (N.D.Ill. 1974) 64 F.R.D. 407, 409. There, welfare recipients sought declaratory and injunctive relief against state welfare officials, alleging the officials had improperly failed to provide them through a shelter system a livelihood (an ability to obtain housing) compatible with health and well-being. The trial court denied the plaintiff's motion for class certification for lack of an ascertainable class and common questions of law or fact, explaining separate adjudications would be necessary to determine whether each potential class member was being deprived of a livelihood compatible with health and well-being and was thus a member of the class. The dearth of facts within *Metcalf* renders it impossible for us to thoroughly comprehend the district court's decision, even with the aid of the explanation in *Metcalf* v. *Trainor* (N.D.Ill. 1979) 472 F.Supp. 576, 582-583. However, the class as presently defined by Plaintiffs here is ascertainable and may be characterized as a class commonly challenging the County's failure to employ a standard which distinguishes between willful and nonwillful violations in every class member's case. In other words, unlike *Metcalf* where the only apparent common issue of law is whether a particular class member was denied a livelihood consistent with health and well-being based upon the specific facts of that class member's case, here objectively all class members who were sanctioned without regard whether their conduct was willful have a common interest in invalidating the challenged regulation.

obligation to administer a statute enacted for the public benefit and affecting members of the public not before the court. [Citations.]" (*California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500, 505 [131 Cal.Rptr. 744].)

Finally, we find unpersuasive the County's assertion that the "common issue" cannot be decided without examining the facts of each individual case. In other words, the County contends that even if all class members share a common interest in whether it had a duty to distinguish between willful and nonwillful violations of the work program, proof of whether it did in fact improperly administer their work project program in its sanctioning process depends entirely on the facts peculiar to each individual case. Rather, whether the County applied an unlawful sanctioning process can be proved by reviewing the County's regulations, the testimony of the County's welfare employees as to the standard practices followed in making sanctioning decisions, as well as a *sampling* of representative cases probative of the County's practice of sanctioning for nonwillful noncompliance with work program requirements.

### THE GENERAL APPROPRIATENESS OF CLASS CERTIFICATION

As already noted, it is especially appropriate to proceed with a class action to provide effective relief when, as here, a large number of welfare recipients have been allegedly, improperly denied governmental benefits on the basis of an invalid administrative practice. (*Employment Development Dept.* v. *Superior Court, supra,* 30 Cal.3d at p. 265, and cases there cited.) ▮ The true appropriateness of proceeding with a class action here rests solely not in the ascertainability of a class of past welfare recipients under section 17000 et seq. (*Adkins* v. *Leach,* (1971) 17 Cal.App.3d 771, 776-777 [95 Cal.Rptr. 61]), but rather the underlying reality that those indigent and disabled who qualify for general relief are utterly desperate and impoverished, dependent as a last resort upon the County grant for the rudimentary necessities of life. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 264 [25 L.Ed.2d 287, 297, 90 S.Ct. 1011]; *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 681; *Jennings* v. *Jones, supra,* 165 Cal.App.3d at p. 1092.) Plaintiffs characterize the general relief program as the "last government safety net" before the streets. Considering the desperate financial condition one must be in in order to qualify for general relief, this assessment is probably correct. If the gravamen of this litigation is legally correct and many past general relief recipients were illegally denied benefits, such victims as a practical matter without class certification will individually neither seek nor obtain redress because they are too poor, their claims too small and the legal issues too arcane to obtain private counsel. The remaining public policy considerations supporting class actions, such as judicial economy, finality of

judgment binding all parties to the decree, and enforceability of class judgments through contempt or supplemental decree, all support the appropriateness of a class action here. Indeed, we must not forget "[t]he class action is a product of the court of equity. 'It rests on considerations of necessity and convenience, adopted to prevent a failure of justice.'" (*Lowry* v. *Obledo, supra,* 111 Cal.App.3d at p. 26, quoting *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 458.) The trial court certification of the class for purposes of prospective relief does not promote justice in that it deprives a potentially substantial class the barest of necessities,[11] a means by which to enforce a vindicated right, and notice one has been invalidly denied general welfare benefits. Accordingly, let us not speculate on the size of the resulting eligible class or how many valid claims will be made, but rather let this matter proceed as a class action as to both prospective and retroactive relief. The nature of the complaint and those who comprise the class compel us to leave to the discretion of the trial court at the remedial phase the fashioning of a cost-effective and practical administrative procedure designed to identify and notify the class members and to resolve individual issues of eligibility and damages, because the County has failed to establish the cost in administering retroactive relief would be disproportionate to the benefits received by class members individually and the class as a whole warranting the denial of class certification as to retroactive relief.

## DISPOSITION

That portion of the order denying class certification as to all individuals who have been sanctioned from the County's general relief program from April 10, 1983, to the date of entry of final judgment is reversed. In all other respects, the order is affirmed.

Wiener, Acting P. J., concurred.

**BENKE, J.**—I concur.

The court below concluded *Metcalf* v. *Edelman* (N.D.Ill. 1974) 64 F.R.D. 407, precludes the class action herein. I do not believe it does so. Moreover, I would read *Metcalf* not as a confusing expression of law but as being consistent with that federal authority which defines when class certification is proper.

Existing California authority provides a class action is not inappropriate merely because each class member must, at some point, make an individual

---

[11] "State general assistance funds withheld in accordance with an invalid regulation constitute a debt of the state effective as of the date of application." (*Lowry* v. *Obledo, supra,* 111 Cal.App.3d at p. 24; *Mooney* v. *Pickett, supra,* 26 Cal.App.3d, at p. 436.)

showing as to eligibility for recovery or the amount of damages involved. (*Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612, 636 P.2d 575].)

Moreover, where there is but one essential issue to be pursued and each claimant's entitlement to benefits depends upon the existence of this single issue rather than a separate set of issues or facts applicable to him, the class action may go forward. (*Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 579-580 [125 Cal.Rptr. 221] [class defined as those denied benefits because their parents maintained a home together elsewhere]; also see *Clothesrigger, Inc.* v. *GTE Corp.* (1987) 191 Cal.App.3d 605, 617 [236 Cal.Rptr. 605] [class composed of those who were charged for one or more unanswered long distance calls; damage amount may vary; class action permitted]; *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 140 [191 Cal.Rptr. 849] [misrepresentation is inferred as to entire class, hence individual "minitrials" not necessary; class action permitted].)

However, where, after the common questions have been determined, each class claimant would still have to litigate a number of substantial questions peculiar to himself in order to recover, there does not exist a necessary community of interest and there is no assurance the class representative would indeed be representative. A class action is therefore improper. (See *D'Amico* v. *Sitmar Cruises, Inc.* (1980) 109 Cal.App.3d 323, 326 [167 Cal.Rptr. 254].)

The preceding rules are easy to articulate. However, the difficulty and danger in examining the number of issues at the class certification stage lies in determining at what point the number of substantial issues passes from the permissible number into the impermissible and whether the multiple issues problem will present itself at the liability or remedial stage of the proceedings. While it is certainly possible, and the court is duty bound to detect an unascertainable class at the certification stage, incorrect focusing at that time on the number of substantial issues potentially involved or when they will arise may in doubtful cases serve to prematurely foreclose a legitimate class action which might more properly be limited or eliminated by decertification in later proceedings on the merits.

Unfortunately, existing California authority does not clearly set forth how the lower court is to go about deciding whether existing issues are appropriately considered at the litigation's merits stage or its remedial stage. As has been observed, the various rules and classifications contained in our case law respecting class actions are not easily reconcilable. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 202, p. 238.)

One potential danger is that multiple issues which may arise and which can properly be absorbed into administrative proceedings and forums at the remedial stage, will be mistaken for an impermissible number of issues for purposes of the litigation on the merits. I believe this is what occurred below.

Whether the multiple issues will arise at the liability or remedial stages depends in large part upon the theory of liability to be advanced by the proposed class. For purposes of the case herein, it is instructive that there is federal authority where, despite potential differences amongst members' claims, certification has been ordered because the legal theory of liability was "as broad as the class claimed." (See *Donaldson* v. *Pillsbury Co.* (8th Cir. 1977) 554 F.2d 825, 832, fn. 6; *Gibson* v. *Local 40, Supercargoes & Checkers, Etc.* (9th Cir. 1976) 543 F.2d 1259, 1264-1265; *Tonya K.* v. *Chicago Bd. of Educ.* (N.D.Ill. 1982) 551 F.Supp. 1107, 1111.) *Metcalf* v. *Edelman, supra,* 64 F.R.D. 407, 409, upon which the trial court here relied, is consistent with these federal cases. Indeed, it appears to me that certification was denied in *Metcalf* not simply because of the number of issues involved, but because plaintiff's counsel were unable to offer the court an objective definition of the class which was consistent with and as broad as their theory of liability, i.e., denial of a livelihood compatible with health and well-being. (*Ibid.*) In this case, the plaintiff's theory of liability is that the county illegally sanctioned individuals without first drawing a distinction between those acting willfully and those acting nonwillfully. The proposed class—everyone "sanctioned"—is objectively discernible and coextensive with the theory of liability.

Although the county's ultimate liability to each class member may well depend upon individual factual circumstances, the county's existing administrative forums do provide a suitable means of protecting individual interests without sacrificing the efficacy of a class proceeding. Thus, contrary to the court's ruling below, the holding in *Metcalf* is not an impediment to certification of the proposed class.

A petition for a rehearing was denied December 4, 1987, and appellants' petition for review by the Supreme Court was denied March 3, 1988.