[No. A021709. First Dist., Div. Five. Mar. 22, 1985.]

DONALD JENNINGS et al., Plaintiffs and Appellants, v.
WESLEY JONES, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Robert J. Shull, Robert John Hughes, Charles K. Greenfield, H. David Grunbaum and Eileen Matteucci for Plaintiffs and Appellants.

Evelyn R. Frank, Melinda R. Bird, Ralph Murphy, Phillip Bertenthal, Anthony Mischel and Tricia M. Berke as Amici Curiae on behalf of Plaintiffs and Appellants.

Donald L. Clark, County Counsel, and Robert J. Menifee, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**HANING, J.**—Santa Clara County general assistance recipients Donald Jennings and David Evans, and the Welfare Recipients League (appellants) instituted a class action[1] against the Santa Clara County Board of Supervisors and the Director of its Social Services Department (county) for retroactive general assistance (GA) benefits. They sought injunctive, declaratory and mandamus relief from county welfare regulations and policies which provide for termination of GA benefits for a fixed duration for recipients who fail to comply with various aspects of the county's "work-for-relief" program. The trial court denied all appellants' claims and entered judgment for the county.

Appellants' many contentions may be distilled to two basic challenges: (1) the imposition of fixed durations of suspension of benefits violates both the statutory scheme for providing GA benefits and the federal and state Constitutions and, (2) the method by which benefits are terminated violates procedural due process. We reverse, concluding that the regulations under which the sanctions were imposed violate the statutory scheme for providing GA benefits, and that the pretermination hearing method utilized by the county lacks procedural due process.

The county's GA program provides minimal cash benefits (approximately $215 per month) to indigent persons who have less than $50 in assets and no other source of income or benefits. The recipients fall into three general categories: those deemed to be employable, those deemed unemployable and a third group of unemployable persons housed in board and care facilities. Although no persons classified as unemployable are parties to this proceeding, the record indicates that in September 1978, the board changed its policy to include unemployable persons in the group subject to sanctions.

As a condition to receiving GA benefits the recipients are required to participate in the county's program of work assignment, work training and

---

[1] In *Gonzales* v. *Jones* (1981) 116 Cal.App.3d 978 [171 Cal.Rptr. 567], another division of this court reversed the trial court's order denying appellants' class certification.

other self-support programs. A failure to comply with the program requirements without good cause results in a fixed period of disqualification as a GA recipient.[2]

If a caseworker determines that a recipient has failed to comply with the program requirements, the recipient is sent a written notice that his or her benefits will be discontinued for the sanction period. The recipient is advised of the right to request a hearing and to request reinstatement. If a hearing is requested within seven days of the date of the notice, benefits are continued pending the decision of the hearing officer. Hearings are normally held within two weeks of the filing of the request, and decisions generally rendered within ten days thereafter.

The hearing officer is employed by the county counsel. Recipients may represent themselves, or be represented by attorneys or lay advocates. At the hearing, witnesses are not sworn, subpoenas are not issued and no reporter or recording device is present. The county is represented by a department of social services employee. The caseworker who made the decision to terminate benefits is not present and there is no method by which his or her attendance can be compelled.

If the hearing officer affirms the decision to terminate benefits, the recipient may appeal to the board of supervisors, and most appeals are heard within two weeks of the filing of the appeal. However, benefits are not continued pending the appeal. At the hearing before the board of supervisors, the recipient has the same right of representation as before the hearing officer. Evidence may be taken by the board; witnesses are not normally sworn, but may be; subpoenas may be issued at the discretion of the board and the proceedings are recorded.

Until August 1981, the county had no written operational definition of "good cause." The caseworkers were simply told to base their determinations of good cause on whatever was "reasonable and practical" under the circumstances and to use "prudent judgment." At no time has there been a requirement that noncompliance must be deemed wilful before benefits may be terminated; benefits may be terminated for nonwilful as well as wilful violations.

I

 Appellants contend the county's pretermination hearing mechanism violates procedural due process in that it fails to provide: (1) a written

---

[2]The periods of suspension have varied from 30 days to 6 months, depending upon the regulation in effect at the time. It has periodically undergone revision.

transcript of the proceedings, (2) subpoenas to compel the attendance of witnesses, (3) an impartial hearing officer, and (4) the right to confront and cross-examine adverse witnesses. Appellants' contentions are answered by two significant cases which establish guidelines for such pretermination hearings: *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], and *McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266].

*Goldberg* involved a New York procedure for termination of welfare benefits. Pursuant to a state administrative regulation, the New York City Department of Social Services promulgated procedures for termination of welfare benefits which did not allow the recipient whose benefits were being terminated to personally appear, present evidence or confront and cross-examine witnesses. Following termination of benefits the recipient was entitled to a "fair hearing" before an independent state hearing officer, at which he could appear, confront and cross-examine witnesses and have a record. If he prevailed, the funds erroneously withheld were restored.

■ *Goldberg* held that "when welfare is discontinued, only a pretermination evidentiary hearing provides the recipient with procedural due process." (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 264 [25 L.Ed.2d at p. 297].) It also held that the pretermination hearing did not require the formalities of a judicial or quasi-judicial trial. Emphasizing the necessity for expeditious and informal hearings at the pretermination stage, *Goldberg* held that only minimal procedural safeguards were required. Among them, however, were the rights of confrontation and cross-examination. "Welfare recipients must therefore be given an opportunity to *confront and cross-examine* the witnesses relied on by the department." (*Goldberg* v. *Kelly, supra,* 397 U.S. at pp. 269-270 [25 L.Ed.2d at p. 300], italics added.)

Following *Goldberg* is *McCullough* v. *Terzian, supra,* 2 Cal.3d 647. *McCullough* involved the validity of a department of social welfare regulation pertaining to persons receiving aid to families with dependent children (AFDC). The regulation governed, inter alia, the pretermination procedure for AFDC recipients whose aid was about to be curtailed. Holding the regulation invalid due to its lack of procedural safeguards, the *McCullough* decision addressed the procedural challenges raised in the instant case.

Citing *Goldberg,* the *McCullough* court stated that "[r]elatively speedy solutions to eligibility problems are desirable and only minimal procedural safeguards are required. [¶] Such safeguards include . . . the right to . . . *confront and cross-examine witnesses.* . . . [¶] An opportunity to . . . confront and cross-examine witnesses is, of course, required . . . . [¶] Another ground of invalidity posited by plaintiffs is that the regulation fails to pro-

vide an impartial trier of fact. In *Goldberg* the Supreme Court held that while it agreed with the decision of the lower federal court in the same case that 'prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker,' he should not have 'participated in making the determination under review.' [Citation.] . . . [¶] Plaintiffs urge that the regulation is defective because it does not provide that witnesses may be subpoenaed or that they must testify under oath. It is claimed that these requirements are included in the right to cross-examine and are essential for a meaningful decision. No statute has been cited giving persons employed by county welfare departments the power to issue subpoenas and administer oaths, and we are of the view that such formalities are not required at the pretermination stage. . . ." (*McCullough* v. *Terzian, supra,* 2 Cal.3d at pp. 654-657, italics added.)³ *McCullough* also rejected the claim that California law provides additional safeguards beyond those required for basic due process.

■ Hence, testimony under oath, verbatim transcripts and a process for issuance of subpoenas are not necessary at the pretermination stage. The use of the law student employed by the county counsel as hearing officer does not conflict with *Goldberg* or *McCullough* since he did not participate in the decision to terminate benefits. However, we conclude that the rights of confrontation and cross-examination are impermissibly denied by the regulations under review.

The decision to terminate benefits is made by the caseworker without any review by a supervisor. The termination decision is often based upon information received by the caseworker from other individuals, some of whom may be within the department of social services and some without. However, the caseworker does not appear at the pretermination hearing and no procedure exists by which his or her attendance can be required. Instead, another employee of the department appears at the hearing with the file. This employee has not participated in the decision to terminate benefits, and may have no direct information about the case other than that which can be obtained by reading the file. He or she merely presents a case summary prepared by the caseworker who made the termination decision.

---

³*McCullough* mentioned that the "fair hearing" referred to in *Goldberg* was comparable to that provided by Welfare and Institutions Code section 10950. That section provides for administrative hearings for dissatisfied recipients of certain public aid. The "fair hearing" is conducted pursuant to the Administrative Procedure Act, which provides, in Government Code section 11513, subdivision (c), that: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." The statutory "fair hearing" is not available, however, to recipients of aid financed exclusively by county funds, such as GA recipients. Thus, the plaintiffs in *Goldberg* and *McCullough* had hearsay protection at the administrative level which is not available to plaintiffs in the instant case.

■ The right of confrontation contemplates a face-to-face confrontation and the ability to cross-examine the witness being confronted. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 63-64 [65 L.Ed.2d 597, 606, 100 S.Ct. 2531]; *California* v. *Green* (1970) 399 U.S. 149, 157, 158 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930]; *People* v. *Chavez* (1980) 26 Cal.3d 334, 349-361 [161 Cal.Rptr. 762, 605 P.2d 401].) In civil cases involving the deprivation of property or other vested interest, due process requires the same general safeguards. (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 540 [189 Cal.Rptr. 512, 658 P.2d 1313]; *Pence* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 48, 50-51 [45 Cal.Rptr. 12, 403 P.2d 140]; *Olive Proration etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204, 210 [109 P.2d 918]; *McLeod* v. *Board of Pension Commissioners* (1970) 14 Cal.App.3d 23, 28 [94 Cal.Rptr. 58]; *Argonaut Ins. Exch.* v. *Ind. Acc. Com.* (1953) 120 Cal.App.2d 145, 152-153 [260 P.2d 817]; *Langendorf etc. Bakeries* v. *Ind. Acc. Com.* (1948) 87 Cal.App.2d 103, 104 [195 P.2d 887].) ■ The appearance at the hearing of a file custodian does not, by itself, satisfy the requirement of confrontation nor provide for meaningful cross-examination. The recipient whose benefits are being terminated cannot cross-examine a file. Nor can there be any meaningful cross-examination of a temporary custodian who did not participate in the decision to terminate benefits, and who has no independent knowledge of the case. This becomes particularly significant in light of the fact that during much of the time period with which we are concerned, each caseworker applied his or her own concept of "good cause" for termination.

We do not suggest that hearsay rules should apply strictly. Even so, it might be argued that the case files are business records. However, our examination of the case files in evidence reveals a mass of various forms and bureaucratic jargon decipherable only by someone experienced in the bureaucracy involved. They also contain hearsay which would be meaningful only to the caseworker. The hearing officer during much of the time period involved here was a law student employed by the county counsel who received virtually no training for the job. He watched other hearings over a two-week period and then was put on his own. He had no supervision and was given only an outdated general assistance manual for references. He was not even advised as to which party had the burden of proof.

■ "[W]hen a person is deprived of a statutorily conferred benefit, due process analysis must start . . . with an assessment of what procedural protections are constitutionally required in light of the governmental and private interests at stake." (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 264 [158 Cal.Rptr. 316, 599 P.2d 622]; see also *Goldberg* v. *Kelly, supra,* 397 U.S. at p. 263 [25 L.Ed.2d at p. 296].) Procedural due process is not a static concept, but a flexible one to be applied to the needs of the particular situ-

ation under consideration. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; *Rochin* v. *People of California* (1952) 342 U.S. 165, 171-172 [96 L.Ed. 183, 189-190, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654 [183 Cal.Rptr. 508, 646 P.2d 179]; *People* v. *Ramirez, supra,* 25 Cal.3d at p. 268; *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].)

■ Under the circumstances present here, the county's refusal to provide a knowledgeable caseworker in attendance at the pretermination hearing resulted in a denial of the rights of confrontation and cross-examination.[4]

## II

■ In addition to the deficiency in the hearing procedure, we also conclude that the county's sanction scheme violates the statutory requirements for the provision of GA benefits. Counties are required to support all indigent, disabled or otherwise incapacitated persons having no other means of support. (Welf. & Inst. Code, § 17000.) The legislative purpose of the GA laws "is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed." (Welf. & Inst. Code, § 10000.) "It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life . . . to encourage self-respect [and] self-reliance . . . ." (Welf. & Inst. Code, § 10000.) Welfare and Institutions Code section 11000 requires that "[t]he provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program."[5] We review the county's regulations in light of the foregoing statutory mandates.

---

[4]The county has various alternatives by which it can satisfy the requirements of confrontation and cross-examination. It could send the caseworker who made the termination decision to the hearing. The record indicates that most recipients deal with more than one departmental employee; they have "intake eligibility workers," "continuing eligibility workers," "vocational services workers," and perhaps others. It *may* be that any of these individuals has sufficient knowledge of the facts to testify. Or, in light of the relatively brief time periods involved, the county could continue the aid until the hearing before the board of supervisors, at which time subpoenas are available and a full record of the hearing is provided.

[5]This statute was amended during the time period covered by this case. It formerly contained the word "liberally" in place of "fairly and equitably." The legislative history contains no statement of legislative intent or reason for the change, but in light of our conclusion herein the amendment is of no consequence.

■ Section 17000 imposes a *mandatory* duty upon the county to support its indigent and disabled persons. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676 [94 Cal.Rptr. 279, 483 P.2d 1231]; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712].) General assistance is the last resort for indigent and disabled persons having no other means of support—it is the only means by which they can obtain the basic necessities of life. (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 264 [25 L.Ed.2d at p. 297]; *Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 681; *City and County of San Francisco* v. *Superior Court, supra,* 57 Cal.App.3d at p. 47.)

■ Testimony by employees of the department of social services reveals that approximately 70 percent of the recipients do not understand the program requirements. The typical GA recipient was described as "the chronically indigent, chronically unemployed . . . unemployable [person] that [isn't] receiving benefits from any other federal program." Most are past middle age and in "desperate financial circumstances." Many suffer from mental and emotional problems which prevent them from complying with program requirements. They have difficulty filling out the necessary forms, and many have difficulty just reading and writing. A consistent theme among the social workers who dealt with GA recipients was the inability of most recipients to understand the program requirements. However, if aid was denied or terminated, the rejected recipient was simply sent out "on the streets" unless the Salvation Army or some similar private organization could be found to provide temporary respite voluntarily.

Specifically, one of the plaintiffs herein originally came to the county seeking psychiatric help. His file indicates that he has mental problems and did not understand his responsibilities under the program. He was destitute and had no means of support. He was sanctioned for missing three vocational services appointments in a six-month period. Another plaintiff was sanctioned for missing two consecutive work projects—he attended a CETA job preparation class instead of a GA work project program. In neither case, nor in any other, was there a finding that the failure to comply was wilful.

■ ■ ■ ■ Given these circumstances and the statutory requirement of section 11000 that public assistance programs be "fairly and equitably construed,"[6] we find neither fairness nor equity in a regulation which

---

[6] Welfare and Institutions Code, section 10061 provides, in part, " 'public assistance programs' refer to those public social services programs provided for in Part 3 of [Division 9]." Section 10000 defines the purpose of division 9 (§§ 10000 through 18971) and requires, inter alia, that aid be "promptly and humanely" administered. Section 17000 imposes the duty on counties to support, in general, the incompetent, the poor, the indigent and the incapacitated. The cardinal rule of statutory interpretation is to interpret the laws so as to effectuate the legislative intent. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [Cal.Rptr. 789, 552 P.2d 749]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110

fails to distinguish between competent, healthy individuals who wilfully fail to comply, and those whose failure is due to mere negligence, inadvertence, or mental or physical disability.

County maintains that pursuant to section 17200 it is entitled, under specified circumstances, to require work as a condition of relief.[7] We agree. However, it is not the county's ability to do so which is in issue, but rather its method of enforcement. ■ The county is entitled to enforce its regulations, but the enforcement procedure must be "consistent, not in conflict with the [statutory scheme], and reasonably necessary to effectuate its purpose." (*Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 679.)

Based upon our conclusion that the disputed regulations are in violation of the statutory scheme for the provision of GA benefits, we need not reach appellants' constitutional argument. (*People* v. *Green* (1980) 27 Cal.3d 1, 50 [164 Cal.Rptr. 1, 609 P.2d 468].) We also decline appellants' request to determine whether fixed periods of suspension are appropriate as sanctions under any circumstances. It is unnecessary for us to reach that issue in deciding the instant case, and any attempt to do so on this record would necessarily lead us into speculative areas.

The judgment is reversed and remanded for further proceedings consistent with this decision.

Low, P. J., and King, J., concurred.

Petitions for a rehearing were denied April 18, 1985, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 16, 1985. Lucas, J. was of the opinion that the petition should be granted.

---

Cal.Rptr. 144, 514 P.2d 1224].) The overall legislative scheme, as the county appropriately points out in its reply brief, must be taken into account and harmonized. (*Tripp* v. *Swoap, supra,* at p. 679.) The cited statutes, along with the entire statutory scheme set forth in division 9, evince a legislative intent to provide a fair, equitable and humane method for administering aid to the needy and the disabled, obligatory on the counties as well as the state.

[7]The regulations impose a fixed period of suspension for failure to comply with various program requirements—not merely the public works program. Such requirements include, inter alia, failure to complete various forms, failure to submit certain reports, failure to attend certain meetings, such as meetings to develop a self-support plan, or failure to obtain medical care which could lead to rehabilitation.