Filed 5/21/14  Marshall v. Chelli CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| CHERYL D. MARSHALL,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>JOSEPH E. CHELLI, as Director, etc., et al.,<br><br>    Defendants and Respondents. | C072618<br><br>(Super. Ct. No.<br>39-2012-00284108-CU-PT-STK) |
| CHERYL D. MARSHALL,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>JOSEPH E. CHELLI, as Director, etc., et al.,<br><br>    Defendants and Respondents. | C073612<br><br>(Super. Ct. No.<br>39-2013-00291892-CU-WM-STK) |

Plaintiff Cheryl D. Marshall appeals pro se from superior court orders denying two petitions for writs of administrative mandamus.  Marshall sought to compel defendant Joseph E. Chelli, as director of San Joaquin County's (County) Human Services Agency

1

(HSA), to set aside orders denying (1) her application for general assistance for relief and food stamps (case No. C072618), on the ground Marshall's ownership of a condominium worth more than $20,000 rendered her ineligible for general assistance, and (2) her subsequent application for interim general assistance, on the ground Marshall had failed to exhaust her administrative remedies (case No. C073612).

Marshall challenges these orders on the merits, and also claims she was denied procedural due process under the Fourteenth Amendment of the federal Constitution because (1) during the administrative hearing that gave rise to case No. C072618, she was not allowed to cross-examine witnesses, and (2) neither administrative hearing was recorded. For reasons we explain, we affirm.

## BACKGROUND

*Petition to Set Aside Denial of General Assistance (Case No. C072618)*

Marshall applied to County HSA for general assistance in March 2012, and was interviewed by caseworker D. Vinson. During the interview, Marshall told Vinson (among other things) that she purchased a condominium in January for $38,000. Vinson determined, on behalf of the HSA, that Marshall's application for general assistance should be denied on the ground that she had "excess resources" and she gave Marshall a notice to that effect, citing the General Assistance Manual section entitled "Property Standards." (Human Services Agency, San Joaquin County, General Assistance Manual (Jan. 2005) §90-500 et seq.; hereafter General Assistance Manual.)[1]

---

[1] As relevant to this appeal, General Assistance Manual section 90-501 states: "Property Counted in the Resource Limits. [¶] .1 All property, in which an applicant/recipient has an interest, is a countable resource unless exempt in this regulation section. [¶] .11 The resource limits insure that individuals who own property sufficient to provide themselves with the necessities of life do not receive aid. [¶] .12 Limits on property, which an [applicant] can retain and remain eligible for aid, are set forth in this chapter."

Marshall requested a hearing to challenge the HSA's denial of eligibility. She argued the denial "fail[ed] to specify the 'resources' that allegedly 'exceed the purported allowable limits' "; her application should have been granted because she provided sufficient proof of her disability and "evidence of having no visible source of income whatsoever"; and she is entitled by statute to the maximum permitted benefit because her "liquid assets do not exceed $3,000."

Administrative hearing officer Susan Hansen conducted the hearing, which was not reported or otherwise recorded. Marshall and her representative learned at the hearing that Marshall's residence was the resource which had effectively disqualified her from receiving general assistance. Marshall's condominium, for which she paid $38,000 in cash, had an assessed value at the date of purchase of $57,000. When Marshall disagreed with the value placed on the condominium, the hearing record was left open to allow her to produce evidence of the condominium's "net market value" on the date of her general assistance application and additional argument supporting her position that the resource limit on real property should not render her ineligible for aid. After receiving Marshall's submission in support of her assertion that the market value of her condominium is only $12,557, the hearing officer issued a written decision, rejecting Marshall's analysis and concluded that the HSA was correct to deny Marshall's general assistance application on the ground her resources were over the limits allowed for recipients of general assistance benefits. A second level review upheld the hearing officer's findings.

General Assistance Manual section 90-502 states: "Resource Limits. [¶] .1 Real Property Limits. [¶] .11 The maximum real property value allowed for an [applicant] household is $20,000 in net market value. [¶] .111 Net market value is determined by subtracting verified encumbrances from the property value assessed by the County Assessor. [¶] .12 The real property limit when property is owned by members of an [applicant] household is not used as a home is $0. [¶] .13 An [applicant] with real property in excess of the allowable limits is not eligible for general assistance. . . ."

3

Marshall then brought the first petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) to overturn the administrative decision on the grounds it was erroneous on the merits and "contaminated by glaring and many due process procedural violations," including that: (1) she was not permitted to cross-examine the witnesses involved in the decision to deny her general assistance benefits; (2) she was not given the " 'staff position statement' " prior to the hearing; (3) the hearing was not recorded; (4) she and her representative were warned against getting out of hand at the beginning of proceedings, when they had done nothing untoward; and (5) the administrative decision improperly calculated the value of the condominium and ignored proof submitted by Marshall. Chelli, as director of the HSA, opposed the petition and argued Marshall was properly denied general assistance benefits based on the assessed value of her condominium and any procedural errors were harmless.

The trial court upheld the administrative decision as supported by substantial evidence, and found the applicable regulations precluded Marshall's receipt of general assistance benefits because her equity in the condominium exceeds $20,000. Moreover, because resolution of the issue turned on a question of law concerning interpretation of the applicable regulation, the court concluded Marshall was not denied due process, even if she were denied the right to cross-examine witnesses, the administrative proceedings were not recorded, and she was warned that security would be called if the hearing got out of hand.

*Petition to Set Aside Denial of Interim General Assistance (Case No. C073612)*

Thereafter, in September 2012, Marshall submitted a second application for general assistance benefits, noting on the form that she sought "interim" assistance because her utilities were past due and her application for Social Security benefits was pending. Her application indicated her ownership of the condominium. The caseworker spoke with Marshall, but she was not called back for a formal interview, and her application was denied on the ground of excess resources.

4

Marshall's request for fair hearing was granted. At the hearing, Marshall's representative argued that the real property resources limit does not apply to interim general assistance, because interim assistance is funded by federal funds and, under Social Security rules, the value of an individual's home is not counted in assessing eligibility. Hearing officer Aaron Moreno determined, to the contrary, that general assistance is a County program funded by County general funds, to which federal Social Security rules do not apply and the HSA was correct to deny Marshall's general assistance application because her resources are over the limits allowed for recipients of general assistance benefits.

Marshall then brought her second petition for administrative mandamus, seeking to overturn that decision on the grounds the general assistance rule imposing a $20,000 net real property restriction on eligibility for aid is incompatible with federal law. She also argued she was prejudiced by procedural error, including the lack of a recording device at the hearing.

Chelli, as director of the HSA, opposed the petition on the grounds: (1) Marshall failed to exhaust her administrative remedies, because she did not seek a second level review of the administrative decision; (2) the denial of Marshall's prior petition of writ of mandate is res judicata on whether Marshall is eligible for general assistance; (3) due process does not require a recorded hearing; and (4) the HSA acted legally and appropriately.

The trial court denied Marshall's petition because Marshall failed to exhaust her administrative remedies by failing to request a second level review. It also concluded the petition lacked merit because federal Social Security regulations do not preempt County

general assistance regulations, and the hearing officer properly concluded Marshall's resources exceed the allowable amount for aid eligibility.[2]

Marshall's appeals in case Nos. C072618 and C073612 were consolidated upon her request.

## DISCUSSION

*I. Standards of Review*

On appeal from the denial of a writ for administrative mandamus, we apply the substantial evidence rule and defer to the trier of fact where the inferences are conflicting. (*Mathew Zaheri Corp. v. New Motor Vehicle Bd.* (1997) 55 Cal.App.4th 1305, 1312.) When reviewing an administrative agency's interpretation of a governing statute, we must "independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) Finally, we presume the judgment is correct, and adopt all inferences in favor of the judgment, unless the record expressly contradicts them. (*Mathew Zaheri Corp. v. New Motor Vehicle Bd., supra*, at p. 1313; see *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

It is the burden of the party challenging a judgment or order to provide an adequate record to assess claims of error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 (*Ketchum*).) An appellant must present an analysis of the facts and legal authority on each point made, and must support the analysis with appropriate citations to the material facts in the record. If an appellant fails to do so, the argument is forfeited. (*County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274

---

[2] After the trial court entered its order denying her petition Marshall moved for a new trial, raising additional claims of procedural irregularity in the decision. The motion was denied on the grounds it was untimely filed and lacked merit.

6

(*County of Solano*); *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).)

Lack of legal counsel does not entitle a litigant to special treatment. A party representing herself is to be treated like any other party and is entitled to the same, but no greater, consideration as other litigants and attorneys. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; see *Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121 [self-represented parties are held to the "the same 'restrictive procedural rules as an attorney' "].)

*II. The Statutory Framework Applicable to General Assistance*

Marshall applied for general assistance, a benefit funded and administered by County. " 'General assistance is a state-mandated program for the support of all poor or incapacitated county residents who lack other means of support.' [Citation.]" (*Bell v. Board of Supervisors* (1994) 23 Cal.App.4th 1695, 1701 (*Bell*); see Welf. & Inst. Code, § 10000.)[3] It is a program of "last resort for indigent and disabled persons having no other means of support -- it is the only means by which they can obtain the basic necessities of life. [Citations.]" (*Jennings v. Jones* (1985) 165 Cal.App.3d 1083, 1092 (*Jennings*); see *Cleary v. County of Alameda* (2011) 196 Cal.App.4th 826, 831 (*Cleary*).)

"Counties are charged by the state with the duty to relieve and support the indigent and disabled. [Citations.]" (*Bell, supra*, 23 Cal.App.4th at p. 1703; see also *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 991.) Two statutes set the general parameters of a county's authority to administer its general assistance program. Section 17000 states: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their

---

[3] Undesignated statutory references are to the Welfare and Institutions Code.

relatives or friends, by their own means, or by state hospitals or other state or private institutions." Section 17001 further provides that "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county." Taken together, these statutes require that the county adopt standards of aid and care sufficient to satisfy its mandatory obligation to relieve and support its indigent poor. (*Cleary, supra,* 196 Cal.App.4th at p. 831.) The county has discretion to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief, although its actions and policies must be consistent with and reasonably necessary to effectuate the purpose of the statutes governing general assistance programs. (*Ibid*.)

In County, the board of supervisors has delegated responsibility for administration of County's general assistance program to the HSA and the regulations containing these standards are set forth in the General Assistance Manual.

*III. Marshall Was Not Unconstitutionally Deprived of a Recorded Administrative Hearing and, Assuming Marshall Were Denied Due Process of Law Because Her Right of Cross-Examination was Curtailed, the Error Was Harmless*

Marshall contends on appeal that her federal constitutional procedural due process rights under the Fourteenth Amendment of the federal Constitution were denied because the administrative hearings concerning the denial of her requests for benefits were not recorded and she was denied the right to cross-examine witnesses by hearing officer Hansen.[4]

---

[4] Although Marshall argues on appeal she was also denied the right to cross-examine witnesses by hearing officer Moreno, her petition for writ of administrative mandamus concedes that, during the hearing conducted by Moreno, her representative "declined to cross-examine" the witnesses.

There are prerequisites to Marshall's assertion that her constitutional procedural due process rights in connection with her application for general assistance were abridged. She must show (1) she possessed a protectable property interest in general assistance benefits, as to which (2) there was a denial of adequate procedural protections. (See *Board of Regents v. Roth* (1972) 408 U.S. 564, 569-571 [33 L.Ed.2d 548]; see also *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18].)

The United States Supreme Court has so far declined to find that a person has a property interest in a government benefit unless he has previously been granted it by the government (and thereby has a property interest in continuing to receive the benefit) and his interest rises from a " 'mere expectancy' " to a " 'claim of entitlement.' " (3 Rotunda & Nowak, Treatise on Constitutional Law (5th ed. 2012) Substance and Procedure, § 17.5(c), p. 114; *id*. § 17.5(a), pp. 107-108; see, e.g., *Greene v. McElroy* (1959) 360 U.S. 474 [3 L.Ed.2d 1377] [aeronautical engineer for a private defense contractor lost his job after the defense department revoked his security clearance based on confidential reports that were never made available to him challenged revocation procedures]; *Goldberg v. Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287] [recipients of public aid are entitled to a hearing to challenge the termination of their benefits]; see also *Jennings, supra*, 165 Cal.App.3d 1083 [general assistance recipients asserting the county's pretermination hearing mechanism violated procedural due process].)

But the Ninth Circuit Court of Appeals has reasoned that the statute authorizing general assistance, coupled with a county's implementing regulations, create "a legitimate claim of entitlement and expectancy of benefits in [an applicant] who claim[s] to meet the eligibility requirements." (*Griffeth v. Detrich* (9th Cir. 1979) 603 F.2d 118, 121; see also *Foss v. National Marine Fisheries Serv*. (9th Cir. 1998) 161 F.3d 584, 588-589.) So, for the sake of argument, we assume Marshall had a protected property right in receiving general assistance benefits sufficient to satisfy the first prerequisite to raising a claim her constitutional due process rights were violated.

9

Addressing the second prerequisite, we ask whether Marshall received adequate procedural protections before her benefits were denied. The essential elements necessary to satisfy due process before the government deprives a person of a protected property interest are (1) adequate notice, (2) a neutral decision maker, (3) an opportunity to make an oral presentation to the decision maker, (4) an opportunity to present evidence or witnesses to the decision maker, (5) a chance to confront and cross-examine witnesses or evidence to be used against him, (6) the right to have an attorney present the case to the decision maker, and (7) a decision based on the record with a statement of reasons for the decision. (See 3 Rotunda & Nowak, Treatise on Constitutional Law, *supra*, Substance and Procedure, § 17.8(a), p. 128.)

Marshall contends she was denied due process both because the administrative hearing was unreported and because she was denied the right to cross-examine HSA employees.

Marshall has not shown she had a due process right to a reported administrative hearing. She identifies no case or statutory authority for the proposition that the administrative fair hearing she was provided to challenge the denial of general assistance must be recorded to satisfy due process, and we are aware of none.[5] The General Assistance Manual does not provide for the reporting of administrative hearings.

Marshall's claim that she should have been permitted by hearing officer Hansen to cross-examine witnesses, however, has merit. It is well settled that parties in civil proceedings, including administrative hearings, have a due process right to cross-examine and confront witnesses. (*McCarthy v. Mobile Cranes, Inc*. (1962) 199 Cal.App.2d 500, 506-507 (*McCarthy*).) " ' "The right to such a hearing is one of 'the rudiments of fair

---

[5] Marshall relies on General Assistance Manual section 10950 et seq., but those sections, by their own terms, do not apply to applicants for "aid exclusively financed by county funds" -- i.e., general assistance. (§ 10950, 6th par.)

play' [citation] assured to every litigant by the Fourteenth Amendment as a minimal requirement." [Citations.] [¶] The reasonable opportunity to meet and rebut the evidence produced by his opponent is generally recognized as one of the essentials of these minimal requirements [citations], and the right of cross-examination has frequently been referred to as another [citations].' " (*Dole Bakersfield Inc. v. Workers' Comp. Appeals Bd.* (1998) 64 Cal.App.4th 1273, 1276-1277 (*Dole*).) The General Assistance Manual also provides that an applicant denied general assistance may request a hearing and an evidentiary hearing "that meets due process requirements" will be provided. (General Assistance Manual, § 90-1201.2.) During that hearing, the applicant may be represented, examine the case file, examine all documents used by the HSA in its decision-making, bring witnesses, establish all pertinent facts and circumstances, present argument question and refute any testimony or evidence, and be afforded *"the opportunity to confront and cross-examine adverse witnesses*." (General Assistance Manual, §§ 90-1202.4, 90-1205.8, italics added.)

Of course, because the hearing was not recorded, Marshall has no way of establishing she was denied the right to cross-examine and, ordinarily, we would find her contention forfeited because it is the appellant's responsibility to show error occurred. (See *Ketchum, supra,* 24 Cal.4th at pp. 1140-1141.) Notwithstanding the lack of a supporting administrative record, the trial court assumed, for argument's sake, that Marshall was in fact denied the right to cross-examine witnesses by hearing officer Hansen. We note that Marshall's representative has submitted a declaration that his request to cross-examine witnesses was denied by Hansen, and we, too, shall assume for argument's sake that Hansen denied Marshall the right to cross-examine HSA witnesses.

That denial of cross-examination, in contravention of constitutional protections and regulation requirements, was error. We nonetheless agree with the trial court that the error is harmless under the circumstances of this case.

11

Both by constitution and statute, Marshall is entitled to a reversal of error below only if the denial of cross-examination resulted in a miscarriage of justice.  (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; Evid. Code, § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ."].)

California courts have generally found a complete denial of cross-examination to be prejudicial error.  (E.g., *Estate of Kasson* (1900) 127 Cal. 496, 506 [error in denying cross-examination is reversible where the party "was too much restricted in her cross-examination of many of respondent's witnesses"]; *Dole, supra,* 64 Cal.App.4th at pp. 1277-1278 [denial of cross-examination of a rating expert was not harmless because it was impossible to say whether the questioning would have had some bearing on the finding]; *McCarthy, supra,* 199 Cal.App.2d at pp. 509-510 [complete denial of cross-examination is prejudicial error under the California Constitution].)  "The right of cross-examination is fundamental, and its denial or undue restriction is frequently reversible error."  (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 237, pp. 345-346 [denial or restriction of cross-examination in civil cases].)

However, a complete denial of cross-examination may be found to be harmless error in unusual circumstances.  For example, in *Mueller v. J. C. Penney Co.* (1985) 173 Cal.App.3d 713, the trial court erroneously denied a husband the right of cross-examination as to his cause of action for loss of consortium, in an action where his wife alleged injury due to assault and battery.  The jury rejected the wife's tort claims.  The Court of Appeal found that the court's denial of the husband's right to cross-examination was harmless error under "the unique circumstances of this case" because the husband's

claim for loss of consortium was dependent on a finding of tortious conduct against the wife. (*Id.* at pp. 722-723.)

In our view, this case presents one of the rare circumstances in which we may find that the appellant could not have been prejudiced by the denial of the right to cross-examination. The only issue presented during the hearing before hearing officer Hansen was whether, by virtue of her ownership of the condominium, Marshall surpassed the resource limits imposed by County. County had discretion to determine the eligibility requirements for general assistance (see *Cleary, supra,* 196 Cal.App.4th at p. 831), and to conclude that resource limits on eligibility were useful to ensure "that individuals who own property sufficient to provide themselves with the necessities of life do not receive aid." (General Assistance Manual, § 90-501.11.) To that end, County imposed limits on the property an applicant can retain and remain eligible for aid. (General Assistance Manual, § 90-501.11.) County also had discretion to promulgate regulations providing that an applicant owning more than $20,000 equity in real property -- based on the assessed value of the property by the county assessor -- is not eligible for general assistance. (General Assistance Manual, § 90-502.1.)

Resolution of the issue turned exclusively on a question of law concerning interpretation and application of these regulations limiting the value of real property which an eligible applicant may own. Because the value of the condominium was to be established by the county assessor, and it was undisputed that Marshall had paid cash for the home, cross-examination of HSA employees could have yielded nothing relevant to the question of whether the value of Marshall's condominium undermined her claim for general assistance. The determination of the value of Marshall's condominium did not turn on the credibility of HSA witnesses, and HSA employees were not the source of any information on which that determination was based. Marshall cannot have been injured by any loss of the right to cross-examine HSA witnesses during the administrative hearing. Accordingly, we conclude that the denial of cross-examination was, under the

13

circumstances of this case, harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 87] [violations of federal constitutional rights require reversal unless we can declare the error harmless beyond a reasonable doubt].)

*IV. Marshall Did Not Exhaust Her Administrative Remedies before Petitioning to Compel the HSA to Grant Her Interim Assistance*

In case No. C073612, the HSA opposed Marshall's petition for writ of administrative mandamus on the ground she failed to exhaust her administrative remedies, in that she did not seek a second level review of the administrative decision denying her request for interim assistance before filing the petition. The trial court agreed and denied Marshall's petition on that basis.

On appeal, Marshall raises a number of challenges to the trial court's denial of her petition to set aside the HSA's decision to deny her interim assistance, arguing (among other things) that the HSA failed to follow federal guidelines in assessing her application for interim assistance and that its denial of interim assistance was wrong on the merits. She does not, however, assert that the trial court was wrong to conclude she failed to exhaust her administrative remedies.

It is well settled that judicial intervention is premature until the administrative agency has rendered a final decision on the merits. Before seeking judicial review, a party must show that he has made a full presentation to the administrative agency upon all issues of the case " ' "and *at all prescribed stages* of the administrative proceedings." [Citations.]' " (*Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307, 311 (*Lopez*), italics added; *Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 520.)

A failure to exhaust administrative remedies is a fundamental defect. " 'The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the

14

administrative tribunal, and the courts may act only to review the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy has been held jurisdictional in California.' [Citation.]" (*Lopez*, *supra*, 232 Cal.App.3d at p. 311, italics omitted.) Exhaustion of administrative remedies is required wherever the administrative procedure is authorized by statute or by rule of the administrative agency involved. (*Id.* at p. 314)

Here, the rules applicable to administration of County's general assistance program are set forth in the General Assistance Manual and provide for a second level review on any decision from the evidentiary hearing conducted before a hearing officer. (General Assistance Manual, §§ 90-1202.5, 90-1207.) These administrative rules regarding exhaustion through second level review apply to defendant because interim assistance is general assistance, financed by County funds, and furnished for meeting the basic needs of an applicant for federal Social Security benefits while she is awaiting the outcome of the Social Security determination process.

It is undisputed that Marshall failed to seek a second level review of the denial of interim assistance. She thus failed to exhaust her administrative remedies before bringing the petition for writ of mandate in case No. C073612, and the court properly denied her petition on that basis. (See *Lopez*, *supra*, 232 Cal.App.3d at p. 314; see also *Wright v. State of California* (2004) 122 Cal.App.4th 659, 664-665 [failure to proceed through all internal levels of review of administrative decision precludes inmate from seeking relief in the trial court].) On appeal, she neither argues the trial court erred in concluding she failed to exhaust her administrative remedies, nor does she contend there exists any basis for excusing her failure to do so. Accordingly, her arguments that the trial court erred in denying her petition for writ of mandate in case No. C073612 are forfeited.

(*County of Solano, supra,* 75 Cal.App.4th at p. 1274; *Duarte, supra,* 72 Cal.App.4th at p. 856.)

## DISPOSITION

We affirm the court's orders denying Marshall's petitions for writs of administrative mandamus.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

                                                      \_\_\_BLEASE_____, Acting P. J.

We concur:

\_\_\_HULL_____, J.

\_\_\_HOCH_____, J.